No. 89,042

State of Kansas, *Appellee*, v. Johnny F. Tosh, II, *Appellant*.

(91 P.3d 1204)

Opinion filed June 25, 2004.

*Korey A. Kaul*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Linda E. DeWitt*, special counsel, argued the cause, and *Larry A. Markle*, assistant county attorney, *F. William Cullins*, county attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Johnny F. Tosh, II, was convicted of rape, aggravated sexual battery, and aggravated kidnapping. In an unpublished opinion, the Court of Appeals affirmed his convictions and remanded for resentencing. This court granted Tosh's petition for review on the single issue of prosecutorial misconduct.

The facts are set forth in the Court of Appeals' opinion, and they are not at issue as to this single-issue review. The following statement of facts is based on that of the Court of Appeals:

Tosh lived with his wife and their three daughters. His 16-year-old daughter, K.T., testified that when she went upstairs to ask her father to put shelves in her bedroom, Tosh pushed her into a closet and told her to take her clothes off. When she refused, Tosh closed the door and locked her in the closet for approximately a minute. He opened the door and again asked K.T. to take off her clothes. She complied.

Tosh blocked K.T.'s exit from the closet and asked her if anyone had ever licked her nipples or vagina. He did both and penetrated her vagina with his finger.

Hearing someone approach, Tosh told K.T. to get dressed. She did and then went downstairs to wash the dishes as Tosh had asked her to do.

Later that day, Tosh asked K.T. to come to the weight room to help him move weights. In the weight room, Tosh removed K.T.'s clothes and told her to sit on the weight bench. K.T. testified that Tosh inserted his penis into her vagina. He told K.T. he should be punished for what he did.

The next day K.T. went to her job at a fast-food restaurant. When she finished work at 5 p.m., she called her parents and told them she had to work late. She went to her boyfriend's house and told him what had taken place with Tosh the day before. She decided to make a report to the police.

At the police station, K.T. was interviewed by Detective Diane George, who testified that K.T. appeared to be nervous and fright-

ened during the interview. K.T. told George about two incidents in addition to what had happened the day before. K.T. told George that when she was 8 years old Tosh had asked her to hold his penis and that when she was 13 he put her hand down his pants to touch his penis.

When Detective George interviewed Tosh, he said that he had shut K.T. in the closet, had touched her breasts, and had penetrated her vagina with his finger. He also acknowledged a second incident in the weight room. He said, however, that his penis only touched K.T.'s vagina. Tosh recalled the incident when K.T. was younger when he had asked her to hold his penis.

A portion of George's interview of Tosh was recorded. It was played for the jury.

Tosh testified at trial that he did not recall his interview with Detective George. He also testified that during the time of the relevant incidents, he was taking approximately 180 to 280 tablets of over-the-counter ephedrine each day.

The sole issue before this court is whether the prosecutor's conduct was improper and denied Tosh a fair trial. Tosh complains of four separate instances of misconduct by the prosecuting attorney, F. William Cullins, during the trial. A two-step analysis is applied to allegations of prosecutorial misconduct. First, the court decides whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, the court must decide whether the comments constitute plain error, that is, whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny him or her a fair trial, thereby requiring reversal. The facts of each case must be scrutinized in determining whether a prosecutor's remarks deny the defendant a fair trial. If the prosecutor's statements rise to the level of violating a defendant's right to a fair trial and deny a defendant his or her Fourteenth Amendment right to due process, reversible error occurs without regard to a contemporaneous objection. *State v. McHenry*, 276 Kan. 513, 522, 78 P.3d 403 (2003).

Cross-examination of Heath. Richard Heath was a defense witness. He testified on direct examination that his family and Tosh's family were close and that Tosh had a close relationship with K.T.

He recounted one occasion when Tosh's drug use affected his memory.

On cross-examination, the prosecutor asked whether Heath was aware of the allegations against Tosh. Heath answered that he was. The prosecutor then said, "Well, we've rested our case, so we've proven that he raped his daughter, kidnapped his daughter and raped her again. You're aware of that, right?" Defense counsel's objection was sustained. The prosecutor continued his questioning by asking again whether Heath was aware of the allegations against Tosh and then asking when he became aware of them.

Although no curative instruction was requested, Tosh argued that the trial court should have given one. The Court of Appeals seems to have concluded that no instruction specific to this cross-examination was necessary, at least without a request for one. The Court of Appeals also noted that "the jury was later instructed that statements, arguments, and remarks of counsel were not evidence and should be disregarded if not supported by evidence and that the State had the burden of proof."

Tosh argues that the general instruction that counsel's statements are not evidence and should be disregarded if not supported by the evidence was ineffective because the prosecutor remarked on the legal effect of the State's evidence rather than on the evidence. Tosh contends that it was not enough for the trial court to sustain the objection without instructing the jury that he was presumed innocent until the jury determined that the State had met its burden of proving him guilty. An instruction on the presumption of innocence might have been appropriate at the time, but no authority for its being required has been cited by Tosh. When the case was submitted to the jury, it was instructed as follows: "The State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty. You must presume that he is not guilty until you are convinced from the evidence that he is guilty."

The Court of Appeals noted that the prosecutor's statement amounted to telling the jury that the State had satisfied its burden of proof on the charges of rape and aggravated kidnapping. It further noted that such an assertion in the form of a question to a

witness is improper. Although not directed to the jury, it was obviously an attempt to prejudice the defendant and constitutes prosecutorial misconduct.

Intention to plead guilty. The second instance of alleged prosecutorial misconduct occurred during the prosecutor's cross-examination of the defendant:

"Q. Now, can you provide the jury with any reason why [K.T.] would indicate these things happened when they didn't?
"A. No, sir, I can't.
"Q. In fact, she's your daughter and she's a pretty good girl, right?
"A. Yes, she is.
"Q. Now, in the past, haven't you told your wife that you were just going to plead guilty to these things?
"A. No, I have not.
"Q. Are you sure, Mr. Tosh?
"A. (Shaking head).
"Q. Or is your memory being selective again?
"A. It's not being selective. I have not ever told her I was going to plead guilty to this.
"Q. Have you ever told her that you were guilty of these things?
"A. No, sir, I have not."

With regard to Tosh's complaints about this exchange, the Court of Appeals stated the following:

"Tosh argues that evidence of plea negotiations or discussions is inadmissible. See *State v. Peckham*, 255 Kan. 310, 331, 875 P.2d 257 (1994) (evidence of plea negotiations for pending drug charges was inadmissible to prove defendant's guilt in the drug cases; however, plea negotiations were admissible in murder trial as evidence of motive, intent, and preparation). In *State v. Lomax & Williams*, 227 Kan. 651, 655, 608 P.2d 959 (1980), our Supreme Court did not allow evidence of plea negotiations to be used when cross-examining a witness since the plea had not been accepted and there was no conviction, as required by K.S.A. 60-421. Here, the prosecutor did not ask Tosh about plea negotiations with governmental authorities; nonetheless, the prosecutor knew or should have known if any plea agreement existed.

"Tosh raises this argument in the context of prosecutorial misconduct, where a timely objection is not necessary in order to preserve the issue for appeal when the error rises to the level of denying a defendant his right to due process. Nevertheless, this argument is more of an evidentiary issue than a prosecutorial misconduct issue. Although the prosecutor's query regarding Tosh's expressed desire to plead guilty may have been an improper attempt to introduce evidence of plea negotiations, no objection was raised and the questioning was limited in duration.

As is well noted, a timely and specific objection to the admission of evidence at trial must be made in order to preserve that issue for appeal. *State v. Barksdale*, 266 Kan. 498, 511, 973 P.2d 165 (1999)." Slip op. at 8-9.

According to Tosh the questions were intended to mislead the jury into thinking that, because he told his wife he would plead guilty, he was guilty. Tosh points out that the prosecutor's pursuing the issue after Tosh's initial negative answer gave the jury the impression that the prosecutor had a factual basis for his questions. The State, however, has neither supplied a factual basis for the questions nor argued that there was one.

We disagree with the Court of Appeals panel that the implications of this line of questioning were limited to the purely evidentiary. Although the prosecutor may have been working his way toward introduction of plea negotiations, the more obvious and more damaging suggestion was that Tosh had confessed guilt to his wife. This was a highly prejudicial, false, and inadmissible fact that Tosh could not rebut. Thus, the issue is also one of improper cross-examination.

"It is the general rule that counsel may not make assertions of fact in the form of questions to a witness absent a good faith basis for believing the asserted matters to be true. Graham, Evidence: Text, Rules, Illustrations and Problems, p. 436 (2d ed. 1989). A lawyer may not 'in trial·allude to any matter . . . that will not be supported by admissible evidence.' MRPC 3.4(e) (1994 Kan. Ct. R. Annot. 352). However, reversal for failure to prove the underlying factual basis often requires that the record establish the lawyer knew the underlying facts to be false or that the lawyer acted in bad faith. See *Williams v. Mensey*, 785 F.2d 631, 638-39 (8th Cir. 1986). But, when it is the prosecution in a criminal case who makes assertions of fact against the accused during cross-examination, such an affirmative showing of bad faith is not universally required." *State v. Marble*, 21 Kan. App. 2d 509, 901 P.2d 521 (1995).

The Mississippi Supreme Court confronted this issue in *Hosford v. State*, 525 So. 2d 789 (Miss. 1988). Hosford was charged with felonious sexual penetration of a child under 12. The child was not related to Hosford. The prosecution cross-examined Hosford about acts of deviant, sexual conduct with his stepchildren. The court noted that evidence was of "other misconduct which had no probative value on the issue before the jury, and which was inflam-

matory and extremely prejudicial." 525 So. 2d at 792. The court held:

"The error was egregiously compounded by the fact that the State, insofar as this record shows, had no evidentiary basis to ask such questions. Wide latitude should be given in the cross-examination of witnesses, but basic fairness requires that before the State asks questions to the accused directed to whether he is guilty of a series of totally different crimes, it have some basis in fact to ask them. This would be the case even if commission of such crimes were admissible evidence before a jury. Even though the defense objection was sustained, the State's conduct in asking these questions constituted reversible error." 525 So. 2d at 792.

In *Gonzalez v. State*, 572 So. 2d 999 (Fla. Dist. App. 1990), Gonzalez was charged with committing four felonies, including attempted first-degree murder. During cross-examination of Gonzalez, the prosecutor asked if it was fact that he was hired to "get rid of" the victim. There was no evidence presented to support the prosecutor's question. The court found such questions "impermissible because the questioning was not relevant to the crimes charged and, furthermore, certainly was not supported by evidence presented at trial." 572 So. 2d at 1000. The court reversed and remanded for a new trial, stating:

"We hold that this type of questioning was impermissible because the questioning was not relevant to the crimes charged and, furthermore, certainly was not supported by the evidence presented at trial.

"In providing a set of facts, the prosecutor should avoid innuendos or insinuations and, instead, should rely on the testimony of the witnesses and the facts established in evidence. *Bennett v. State*, 316 So.2d 41 (Fla.1975). In the present case, the prosecutor's suggestion that the appellant was hired to 'get rid of' the alleged victim was highly prejudicial and completely irrelevant to the crimes charged or the evidence presented. . . . We find this error to be so inflammatory that it destroyed the appellant's right to a fair trial." 572 So. 2d at 1000.

The improper cross-examination in the present case is as inflammatory, egregious, and prejudicial, if not more so, than that in *Hosford* or *Gonzalez*.

Closing argument. Tosh contends that in one paragraph of the closing argument, the prosecutor improperly accused the defense of raping K.T. again, asked the jury to think about Tosh's motive in requesting a jury trial when he had confessed to the crimes, and

implied that the burden of proof had shifted to Tosh to produce evidence of his innocence. The prosecutor stated:

"Now, the Defendant's probably going to tell you he didn't, that there's no evidence of this, that you shouldn't believe [K.T.], because, well, she had sex with her boyfriend, and on the stand she maybe misstated a few things or they'll interpret the fact that nobody asked her a specific question as her not saying it. They'll tell you that. *They'll kind of rape her again,* but when you hear that stuff, I want you to think about this. Think about two things. *Number one, why are they bothering to do this when the Defendant confessed? And number two, is there any evidence that it didn't happen? Is there any evidence that the things she told you didn't happen?"* (Emphasis added.)

A) Raping K.T. again. A prosecutor should not make statements intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law. *State v. Cravatt,* 267 Kan. 314, 336, 979 P.2d 679 (1999). Remarks similar to those of the prosecutor in this case were made by the prosecutor in another rape case, *State v. Villanueva,* 274 Kan. 20, 33-36, 49 P.3d 481 (2002). In closing argument, the prosecutor said, " 'The funny thing is that's not the — that's not the only rape that took place in this case. The second rape . . . took place when she had to come in here and had her character attacked and her memory attacked.' " 274 Kan. at 33-34. The court found that the prosecutor's comments were outside the scope of proper argument but did not demonstrate ill will when considered in light of the trial record as a whole. 274 Kan. at 35. The court further found that the isolated comment would carry little weight in the face of "substantial, although not overwhelming, evidence against Villanueva." 274 Kan. at 36. Hence, the court concluded "that although the prosecutor's remarks improperly appealed to the sympathies of the jury, in light of the trial record as a whole they did not rise to the level of denying Villanueva's right to a fair trial." 274 Kan. at 36.

The Court of Appeals in the present case stated:

"Similarly, here, the prosecutor's comment was also designed to generate sympathy for K.T. Following *Villanueva,* the remarks should also be assessed in light of the record as a whole. Tosh seeks to distinguish *Villanueva* by asserting that 'improper comments permeate the record' in Tosh's case. Tosh argues the prosecutor's remark was compounded by his allegations that Tosh should not have

gone to trial after making a confession and that Tosh had the burden to prove he was innocent." Slip op. at 11-12.

Tosh correctly points out that the improper comment about K.T. being raped again was not an isolated improper comment, as it was in *Villanueva*.

B) Asking the jury to think about Tosh's motive in requesting a jury trial when he had confessed. On this point, the Court of Appeals stated:

> "Tosh first contends that the prosecutor's comment, 'Number one, why are they bothering to do this when the Defendant confessed?' suggests that Tosh should have waived his right to a trial because he had confessed. Tosh argues that this query suggested, in combination with the prosecutor's implication that he was going to plead guilty, that he should be found guilty merely because he exercised his constitutional right to a jury trial.
>
> "Nevertheless, in closing remarks, the prosecutor did not make any later remarks about Tosh's possible consideration of a guilty plea. Moreover, Tosh's confession had been played for the jury much earlier, and the evidence on the tape was significant." Slip op. at 12.

Tosh argues that it is highly improper for the prosecutor to tell the jurors that they should consider why Tosh was exercising his constitutionally guaranteed right to a jury trial. A prosecutor's comment on the right to jury trial was at issue in *State v. McCorkendale*, 267 Kan. 263, 979 P.2d 1239 (1999). In that case, the prosecutor asked prospective jurors during voir dire, " 'Does everybody know that Mr. McCorkendale is entitled to a jury trial even if he knows he's guilty?' " 267 Kan. at 276. In the circumstances of that case, the comment was not determined to constitute reversible error. It is the defendant's guilt that is improperly implied by the comment in *McCorkendale*. The comment in the present case has more potential for prejudice in its improperly injecting a matter outside the evidence into deliberations as well as implying that the defendant's confession establishes his guilt of all of the charges. It is apparent from the verdict, however, that the jury did not accept the suggestion that Tosh's confession established he was guilty of all charges. The jury acquitted Tosh of the charge of raping K.T. in the weight room. The prosecutor's comment was improper, but

the jury apparently was able to grasp its duty to evaluate the evidence.

C) Implying that the burden of proof had shifted to Tosh to produce evidence of his innocence. The prosecutor's questions were, " '[I]s there any evidence that it didn't happen? Is there any evidence that the things she told you didn't happen?' " The Court of Appeals concluded that the questions were not improper because, in context, they introduced the prosecutor's unobjectionable argument about deficiencies in the defendant's case. The Court of Appeals also noted that the jury was correctly instructed on the State's burden of proof. Tosh faults the Court of Appeals for only considering the questions in isolation rather than along with the comment about raping K.T. again and considering defendant's motive for going to trial. He contends that the questions reinforced the adverse effect of the other comments and that all the improper comments together in a brief paragraph demonstrate ill will on the part of the prosecutor. The Court of Appeals agreed that the cumulative effect of a number of improper comments should be taken into account in determining whether a prosecutor has exceeded the wide latitude afforded him or her.

We consider these comments improper attempts to shift the burden of proof to Tosh. We agree that they must be considered in context, but here the context compounds the error rather than cures it.

D) Asking the jury to protect K.T. The prosecutor ended the first segment of his closing argument with these words: "When [K.T.] was little, and even today, her father failed to protect her. He raped her. You can protect her. You can find him guilty. Thank you." As Tosh contends, such comments are designed solely to inflame the passions of the jurors and divert their attention from the real issues of guilt and innocence.

The Court of Appeals agreed that the remarks were designed to appeal to the jurors' sentiments by charging the jury to convict Tosh in order to ensure K.T.'s safety. For this reason, the Court of Appeals concluded that the remarks fell outside the wide latitude afforded a prosecutor. We agree.

We conclude that each of the four separate instances constitute prosecutorial misconduct. That is to say that the prosecutor's conduct was outside the wide latitude given to a prosecutor. The first step of the analysis having been met, we turn to the second step—whether the conduct was so gross and flagrant as to prejudice the jury against Tosh and thus deny him a fair trial, thereby requiring reversal.

The Court of Appeals quoted the following passage from *State v. Jones*, 273 Kan. 756, 782, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002):

"The appellate court considers three factors to determine whether a new trial should be granted because of prosecutorial misconduct: (1) whether the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) whether the remarks show ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. [Citation omitted.]"

Obviously, the first of these three factors merely repeats in part the statement of the ultimate second step of the analysis: "Whether the misconduct was so gross and flagrant that it denied the defendant a fair trial." Thus, the second step of the analysis is essentially directed to whether the misconduct is so prejudicial that it denies the defendant a fair trial. This analysis requires a particularized harmlessness inquiry utilizing the three factors set out in *Jones*.

With this clarification of the two-step analysis, then the question of whether the prosecutor's behavior was gross and flagrant can occupy a sensible and appropriate place in our analysis as the first of three factors to be considered in the harmlessness inquiry. None of these three factors is individually controlling. Further, it is important that the character of the three factors ensures that our harmlessness inquiry in the unique setting of prosecutorial misconduct will be both practical and punitive, as it should be. Prosecutorial misconduct not only injects error into a criminal trial. It violates the prosecutor's ethical obligations. But we recognize that there are degrees of seriousness in such misbehavior, and our appellate courts must have the freedom to consider those degrees and their likely effects as they decide whether the misbehavior

before them in a given case merits reversal and remand for new trial.

Here, following the *Jones* prescription, the Court of Appeals concluded that the prosecutor's remarks constituted gross and flagrant misconduct, but did not demonstrate ill will, and seemed to have been given little weight by the jury. The Court of Appeals accepted Tosh's argument "that because the prosecutor's misconduct took place within the 1-day trial, the impact of the remarks may have been intensified, and considered cumulatively, the prosecutor's remarks, especially the closing admonition to the jury to protect K.T. from Tosh, constituted gross and flagrant misconduct." Slip op. at 16. But the Court of Appeals expressed doubt that the prosecutor's argument could be characterized as demonstrating ill will when compared to a different prosecutor's conduct in *State v. Pabst*, 268 Kan. 501, 504-09, 996 P.2d 321 (2000). In *Pabst*, the prosecutor attempted to bolster State's witnesses and to shift the burden of proof, and he called the defendant a "liar" 11 times. With regard to the strength of the evidence in this case, the Court of Appeals characterized it as "substantial." In addition, it took particular note of the apparent heavy reliance placed by Tosh's jury on his taped confession.

We do not agree with the Court of Appeals' conclusion that the misconduct in this case did not deny Tosh a fair trial. Although each incident of misconduct in and of itself might not be sufficient to require reversal, the cumulative effect of the four incidents certainly did.

The prosecutorial misconduct was gross and flagrant, the cross-examination of Tosh being the most egregious and inflammatory example. Such cross-examination, as previously noted, placed inadmissible and unduly prejudicial evidence before the jury.

In addition, the cross-examination and comments by the prosecutor were intentional and not done in good faith. They demonstrated the prosecutor's ill will.

In *State v. Dawson*, 48 N.C. App. 99, 268 S.E.2d 572 (1980), the North Carolina Court of Appeals held that the improper cross-examination of a key defense witness required reversal of Dawson's conviction and a new trial. The court held that the cross-exami-

nation was improper because the record failed to show a good faith basis for asking the questions. The court recognized that the State may cross-examine a defense witness but stated:

"However, such cross-examination is limited by the requirement that the questions be asked in good faith. [Citations omitted.] This means simply that the questions must be grounded in fact. The prosecutor may not 'inject into the trial of a cause to the prejudice of the accused by argument or by insinuating questions supposed facts of which there is no evidence.' " 48 N.C. App. at 105.

In this case, the prosecutor never stated or even suggested a plausible basis for his questions to Tosh. The record contains no basis in fact for the questions. We can only conclude that the prosecutor either knew the underlying facts to be false or did not know them to be true and acted in bad faith. In either case it is error and, depending upon the circumstances, may be reversible error. See *Marble*, 21 Kan. App. 2d at 512.

We reiterate what we said in *Pabst*, 268 Kan. at 510:

"*A prosecutor is a servant of the law and a representative of the people of Kansas. We are unable to locate an excuse for a prosecutor's failure to understand the remarkable responsibility he or she undertakes when rising in a courtroom to announce an appearance for the State of Kansas. Instructional materials abound on this topic. Sixty-five years ago the United States Supreme Court said that the prosecutor represents*

'*a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.*' *Berger v. United States*, 295 U.S. 78, 88, 79 L. Ed. 1314, 55 S. Ct. 629 (1935)."

The key words are "that justice shall be done." In *Hosford*, the Mississippi Supreme Court addressed the duty placed on one representing the State:

"A fearless and earnest prosecuting attorney, within the limitations upon his powers and prerogatives, is a bulwark to the peace, safety and happiness of the people. 'If convinced of the defendant's guilt, he should, in an honorable way, use every power that he has to secure his conviction. At the same time, it is the duty of the prosecuting attorney, who represents all the people and has no responsibility except fairly to discharge his duty, to hold himself under proper restraint and avoid violent partisanship, partiality, and misconduct which may tend to deprive the defendant of the fair trial to which he is entitled, * * * *It is the duty of the prosecutor to see that nothing but competent evidence is submitted to the jury;* *

° °' 42 Am. Jur., Sec. 20, p. 255. [Emphasis added] 202 Miss. at 75, 30 So.2d at 596." 525 So. 2d at 792.

Finally, we turn to the third factor in our particularized harmlessness inquiry: Whether the evidence against Tosh was of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of jurors. This factor sounds most like the harmlessness examination now required by K.S.A. 60-261:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

It also echoes the federal harmless error rule declared in *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967), which requires a court to determine that an error was harmless beyond a reasonable doubt in that it had little, if any, likelihood of having changed the result of the trial.

At times, we have applied both the K.S.A. 60-261 and the *Chapman* formulas when the State asserted that a specific error was harmless. For example, in *State v. Donesay*, 265 Kan. 60, 959 P.2d 862 (1998), we examined the district court's admission of emotional testimony from the murder victim's widow about the victim's relationship with her, other family, and friends. We said:

"In *State v. Denney*, 258 Kan. 437, 905 P.2d 657 (1995), this court noted K.S.A. 60-261 and the numerous cases applying the statutory test of whether the substantial rights of a party had been prejudiced. We further stated:
    'Although the standard of "harmless beyond a reasonable doubt" as applied to errors of a federal constitutional magnitude was recognized as more stringent than the one imposed by Kansas statutes, see *State v. Fleury*, 203 Kan. 888, 893, 457 P.2d 44 (1969), in recent years a similar standard has been applied in Kansas to errors not couched as constitutional violations. See *State v. Tyler*, 251 Kan. 616, Syl. ¶ 7, 840 P.2d 413 (1992); *State v. Johnson*, 231 Kan. 151, 159, 643 P.2d 146 (1982).' 258 Kan. at 445.

    . . . .

"In the present case, we apply a similar dual test in determining if the admission of Mrs. Easter's testimony was harmless. *State v. Sanders*, 258 Kan. 409, 418, 904 P.2d 951 (1995). First, we must determine if the admission of the evidence was

inconsistent with substantial justice, *i.e.*, whether substantial rights of defendant were affected by the admission of Mrs. Easter's testimony. Second, if not, can we declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial?

"Here, the district attorney not only had Mrs. Easter testify, but also in her opening statement, over defendant's objection, told the jury in great detail what Mrs. Easter's testimony would be. The testimony was patently irrelevant and deliberately presented for the obvious purpose of inflaming the jury against the defendant. As such, it affected the defendant's right to a fair and impartial trial.

. . . .

". . . We can only conclude that it was intended to infuriate and inflame the jury against the defendant. We cannot objectively conclude the admission of the testimony was harmless error. The district attorney's insistence in presenting this testimony to the jury, and the trial court's allowing her to do it, affected the substantial rights of the defendant to a fair and impartial trial. Thus, we have no choice but to reverse the defendant's convictions." 265 Kan. at 85-86, 88, 89.

In recent years this court and our Court of Appeals have reviewed case after case in which prosecutorial misconduct occurred and the State has argued that such misconduct was harmless error because there was overwhelming evidence against the defendant. The records and oral arguments in those cases have sometimes reflected an attitude on the part of prosecutors that a defendant can be denied a fair trial where the evidence is substantial. Taken to its logical conclusion, acceptance or endorsement of this attitude would lead to a rule that the greater the evidence against a defendant, the less right that defendant has to a fair trial. Neither law nor basic justice can tolerate such a rule. Denial of a fair trial violates the due process rights of the guilty defendant just as surely as those of the innocent one.

These observations counsel caution in our evaluation of the third of the three harmlessness factors in prosecutorial misconduct cases. We must avoid using this factor and the weight of the inculpatory evidence as a default, a shortcut past careful comparison of the often competing influences of the first two factors. We also regard the prosecutorial misconduct case as an appropriate one for application of the dual standard discussed in *Donesay*, 265 Kan. at 88. Before the third factor can ever override the first two factors, an appellate court must be able to say that both the K.S.A. 60-261 and the *Chapman* harmlessness tests have been met. If this can be

said, then certainly it will also be true "that the misconduct would likely have little weight in the minds of jurors."

Here, as the Court of Appeals stated, the evidence against Tosh was substantial, although the jury did acquit him of one count of rape. This is not a case where we can be confident the prosecutor's egregious misconduct would have had little weight. The third factor in our particularized harmlessness analysis weighs in with the first two factors and forces us to reverse and remand.

This court cannot tolerate prosecutors who ignore their special obligation as prosecutors and justify the violation of a defendant's right to a fair trial because the evidence against the defendant is substantial or overwhelming. The presence of substantial or overwhelming evidence against a defendant does not automatically excuse intentional violation of a defendant's right to a fair trial. The Oklahoma Criminal Court of Appeals said it best in *Hager v. State*, 10 Okla. Crim. 9, 12, 133 Pac. 263 (1913):

"This court stands squarely for the doctrine of harmless error, but it is equally committed to the doctrine that fairness must prevail in the trial of criminal cases. We will not tolerate police court methods in courts of record. Trial courts should confine the cross-examination of witnesses to legitimate subjects of inquiry, and should not permit a witness to be brow-beaten or asked insulting questions."

As we previously noted, the prosecutor's improper cross-examination of Tosh was done in bad faith to put before the jury highly prejudicial, false, and inadmissible evidence. As in *Donesay*, the admission of this evidence was inconsistent with substantial justice and was intended to inflame the jury. The prosecutorial misconduct in the present case was so egregious, gross, flagrant, and prejudicial that Tosh's conviction must be reversed and he must receive a new trial.

Reversed and remanded for a new trial.