JOHNSON, J., dissenting:
I strongly suspect that yet another trial would yield the same result, i.e., Miller would be convicted of the first-degree premeditated murder of his wife, Mary. Yet, I cannot condone the conviction in this trial because it was fundamentally unfair, and, as my predecessor on this court, Justice Donald Allegrucci, so aptly declared: "Denial of a fair trial violates the due process rights of the guilty defendant just as surely as those of the innocent one." State v. Tosh, 278 Kan. 83, 97, 91 P.3d 1204 (2004).
The notion that all persons, even those that actually committed the charged crime, are entitled to a fair trial is supported by a plain reading of the Fourteenth Amendment to the United States Constitution, which states, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." (Emphasis added.) No exception is made for those persons against whom the State has amassed overwhelming evidence. Indeed, the United States Supreme Court has interpreted " 'person' in [the] ordinary sense of that term," and declared that the provisions of the Fourteenth Amendment " 'are universal in their application, to all persons within the territorial jurisdiction, without regard to any differences of race, of *949 color, or of nationality.' " Plyler v. Doe , 457 U.S. 202, 210-12, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). In that context, it is inconceivable to me that the framers of the Constitution intended to protect a person's liberty interests with a due process of law that is inversely proportional to the quantum of State's evidence.
The unfairness in this case starts with the retrial's venue. The defense presented an expert to testify about the results of the poll he conducted and to opine on the potential effects of the extensive publicity on the retrial. The State did not challenge that testimony with its own expert on the subject. Yet, the district court discounted this expert testimony, apparently choosing to substitute its own ideas on proper polling methodology for that of the Chairman of the Department of Communication Studies at the University of Kansas.
Nevertheless, it is difficult to fault the district court for denying a motion for change of venue. As the majority concedes, our precedent reveals that denying a change of venue virtually guarantees that the district court's ruling will be affirmed on appeal. But a long history of unfairness does not make it right in this case. See State v. Carr , 300 Kan. 1, 325, 331 P.3d 544 (2014) (Johnson, J., dissenting) (history of incorrectly decided cases not compelling; court not inexorably bound by erroneous or unsound rulings), rev'd and remanded 577 U.S. ----, 136 S.Ct. 633, 193 L.Ed.2d 535 (2016).
Here, however, we are not limited to speculating on the probability that pretrial publicity and preformed opinions of guilt might impact Miller's constitutional right to an impartial jury. The majority concedes that a juror who actually sat in judgment of Miller should have been stricken for cause. I agree that it was a fundamental error to allow A.S. to sit on the retrial jury.
"And a fair trial requires that all of the jurors sitting in judgment of the criminal defendant must commence the trial presuming that the defendant is innocent. That initial state of mind is mandated because '[u]nder our theory of criminal jurisprudence in this nation, the defendant is clothed with a presumption of innocence until he is proven to be guilty beyond a reasonable doubt by the State.' State v. Williams, 229 Kan. 646, 663-64, 630 P.2d 694 (1981). It is not enough for a juror to be open to the possibility that the evidence presented at trial will dissuade the juror that the defendant is guilty. It is not enough for the juror to 'hope' that he or she will be able to set aside preconceived judgments of guilt or to 'try' to disregard inculpatory information to which the juror was exposed prior to trial. Instead, if a juror's state of mind with respect to the case or to the defendant is such as to create 'doubt that he [or she] can act impartially and without prejudice to the substantial rights of [the defendant],' the court has grounds to strike that juror for cause. K.S.A. 22-3410(2)(i) (setting forth one of the grounds for a challenge for cause). In short, the slate upon which the State shall write its guilt-proving evidence must be clean when the trial begins." Carr , 300 Kan. at 322-23, 331 P.3d 544 (Johnson, J., dissenting).
The district court repeatedly provided A.S. with the magic words which would permit the court to deny a challenge for cause, despite A.S. having knowledge of the previous conviction and an opinion of guilt that would always be in the back of his mind during trial. Cf. Carr , 300 Kan. at 325-26, 331 P.3d 544 (Johnson, J., dissenting) (suggesting error for trial court to lead venirepersons into saying magic words in order to pass mitigation-impaired jurors for cause or strike those with misgivings about death penalty). Moreover, one might find it ironic that the court passed for cause so many venirepersons with knowledge of the case and/or an opinion of guilt, given the court's earlier declaration that Dr. Beisecker's poll showed there were 42,550 Douglas County citizens with no knowledge of the case from which the court could reasonably expect to impanel an impartial jury. With so many "clean slate" persons to choose from, why did the trial court make a concerted effort to keep so many jurors from the group who had already formed an opinion about Miller's guilt?
Personally, I view the Farrar principle-that knowledge of a previous conviction is not *950 inherently prejudicial-to be counterintuitive at best. A juror voting to convict a person who the juror knows was previously convicted by the juror's friends and neighbors is the path of least resistance. Bucking popular opinion requires a courageous independence. See United States v. Williams , 568 F.2d 464, 471 (5th Cir. 1978) ("[W]e are hard pressed to think of anything more damning to an accused than information that a jury had previously convicted him for the crime charged."); cf. State v. Cook , 281 Kan. 961, 971-72, 135 P.3d 1147 (2006) (distinguishing Williams because the controlling principle was applicable only in federal courts and because it involved media reports brought to court's attention before a verdict was reached whereas Cook involved whether a juror's posttrial affidavit warranted recall of the jury). Because Cook and The State v. Farrar , 103 Kan. 774, 176 P. 987 (1918), both involved posttrial motions as opposed to the voir dire challenge currently before this court, I would hold the cases are not dispositive of the question presented here. See Cook , 281 Kan. at 972, 135 P.3d 1147 ; Farrar , 103 Kan. 774, 176 P. 987. Here, Miller was prejudiced.
Nevertheless, the problem in this case is our requirement that a criminal defendant-not the State that has the burden of proof-is required to cure a trial court's constitutional error. The trial court denied Miller his right to an impartial jury under the Sixth Amendment to the United States Constitution and Kansas Constitution Bill of Rights, § 10 by impaneling a juror who did not presume Miller to be innocent. The State could have cured that error by using a peremptory challenge to remove the biased juror. But the majority allows the State to use all 12 of its peremptory challenges on discretionary strikes, while requiring the defendant to give up a discretionary strike to cure the constitutional error caused by the court and the State. What is fundamentally fair about that?
While the denial of a trial by an impartial jury is egregious enough, standing alone, there was more. As the district court acknowledged, an assistant in the office of the District Attorney (DA) was "so improper and unseemly" in providing rent-free lodging to a principal State's witness in this case. Further, the office sat on evidence of privileged conversations Miller had with an attorney. Yet, when the DA learned of his assistant's conflict of interest, his first concern was that his office might be disqualified from the case. That seems to ignore our admonition that a prosecutor's interest " 'in a criminal prosecution is not that it shall win a case, but that justice shall be done.' [Citation omitted]." State v. Pabst , 268 Kan. 501, 510, 996 P.2d 321 (2000).
Turning to the evidentiary issues, I agree that the testimony about Miller's accessing the dating websites is tenuous, at best. "The whole point of a relevancy inquiry is to determine whether there is some ' "natural, necessary or logical connection" ' between the proffered collateral facts and the point intended to be established. (Emphasis added.) State v. Gauger, 200 Kan. 563, 565, 438 P.2d 463 (1968) (quoting In re Estate of Isom, 193 Kan. 357, Syl. ¶ 2, 394 P.2d 21 [1964] )." State v. Miller , 284 Kan. 682, 725, 163 P.3d 267 (2007) (Johnson, J., concurring) ( Miller I ). The evidence of visiting dating websites, especially in light of no evidence of any emails contacting people on the websites, has no logical connection to a relevant fact in this case that would make it more likely that Miller killed his wife.
Likewise, the graphic photographs depicting Miller in bondage and engaged in a sex act were not necessary to prove the elements of the charged crime. At the very least, the prejudicial effect of the photographs substantially outweighed any need to establish the type of extramarital sexual relationship Miller had maintained. The law of the case doctrine is a prudential vehicle, and I would find it imprudent to apply it in this case.
Finally, I would consider Miller's challenge to Dr. Mitchell's expert opinion on the cause of death in assessing the impact of cumulative error. We state that the test is whether the totality of the circumstances establish that the defendant was substantially prejudiced by cumulative errors and was denied a fair trial. We are to examine the trial errors "in the context of the entire record." Carr , 300 Kan. at 251, 331 P.3d 544. The examination of the forensic pathologist is contained *951 within the record, regardless of whether Miller contemporaneously objected. The doctor's own testimony calls into question whether his opinion was improperly based upon assessing witnesses' credibility and weighing conflicting evidence. That context should push this case over the line of acceptable prejudice to the side of reversibility.
In short, notwithstanding the practical and emotional costs of yet another retrial, our Constitutions require that result in order to maintain the integrity of our criminal justice system. See Tosh , 278 Kan. at 97, 91 P.3d 1204 (recognizing that neither law nor basic justice can tolerate a rule that "the greater the evidence against a defendant, the less right that defendant has to a fair trial").