NOT DESIGNATED FOR PUBLICATION

No. 117,557

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SALVADOR ESTEBAN GARCIA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed November 9, 2018. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., BUSER and SCHROEDER, JJ.

PER CURIAM: Salvador Esteban Garcia appeals from his conviction for aggravated indecent liberties with a five-year-old girl. On appeal, Garcia contends that the State committed prosecutorial error during voir dire and that the district court erred by preventing him from cross-examining the child's mother about his alleged sexual relationship with her. Garcia also contends this court should reverse his conviction on the grounds of cumulative error. We find none of these contentions to be persuasive. Thus, we affirm Garcia's conviction.

1

On the night of April 17, 2015, Garcia was staying at the home of his girlfriend and her six children in Wichita. The children ranged in age from 5 years old to 13 years old. That night, Garcia went to bed in the mother's bedroom while she went to bed on a foam mattress in the living room with her five-year-old daughter, B.P., and another child. At some point during the night, Garcia picked up B.P.—who was asleep—from the mattress and carried her into the bedroom.

A short time later, the mother got up to go to the bathroom. When she left the bathroom, she felt uneasy about the closed bedroom door. Upon opening the bedroom door, the mother saw B.P.—who was naked from the waist down—laying on Garcia's chest. The mother turned on the light and could see that B.P. was wearing only a shirt. She could also see that Garcia had his boxers pulled down to his knees or ankles. Garcia attempted to pull up the blanket.

The mother rushed into the bedroom and picked up B.P. As she did so, Garcia pulled up his boxers and sat up on the edge of the bed. After putting her daughter down, the mother started hitting Garcia. She then took B.P. back to the living room and laid her on the foam mattress. When she returned to the bedroom, the mother began hitting Garcia again while asking him why he would do such a thing. The mother found B.P.'s pants and pullup on the floor and held them in Garcia's face while yelling at him. According to the mother, Garcia told her that he "just wanted to rub [the five-year-old girl's] butt."

The mother collected B.P.'s clothing and returned to the living room to call 911. After speaking with the mother, police officers arrested Garcia. Subsequently, officers conducted an interview with the mother and with B.P. A nurse at a local hospital examined B.P. for evidence of inappropriate sexual contact but did not find such evidence.

In the early morning hours, Wichita Police Department Detective David Wertz interviewed Garcia. Prior to asking Garcia any questions about his arrest, Detective Wertz provided Garcia a written declaration of his *Miranda* rights, explained those rights, and Garcia voluntarily waived those rights. During the interview, Garcia admitted that he had taken the five-year-old into the bedroom and that he rubbed her buttocks while holding his penis. Garcia admitted that he was "sort of" sexually aroused by the child's buttocks and mentioned to Detective Wertz that he had sexual fantasies about younger girls' buttocks. Throughout the interview, Garcia claimed he was suffering from some sort of addiction to either sexual activity or to female buttocks. Detective Wertz provided Garcia with a paper and a pen to write a note to B.P., and Garcia wrote, "I am sorry."

The State charged Garcia with one count of aggravated indecent liberties with a child, in violation of K.S.A. 2014 Supp. 21-5506(b)(3)(A). The State presented the testimony of three witnesses at the four-day jury trial that commenced on April 25, 2016. First, the State called Officer Tiffany Dahlquist, who made contact with B.P.'s mother after the initial 911 call. Second, the State called the child's mother, who testified about her observations on the night of the incident. Third, the State called Detective Wertz, who testified about the criminal investigation and about his interview with Garcia. The State also introduced into evidence a video recording of Detective Wertz' interview of Garcia, the note Garcia wrote to B.P., and a photo of the child during her interview with police.

After the State rested, Garcia moved for a judgment of acquittal. The district court denied the motion, and Garcia did not call any witnesses or introduce any exhibits into evidence. Following the closing arguments presented by counsel, the district court submitted the case to the jury. Ultimately, the jury convicted Garcia of aggravated indecent liberties with a child.

3

On February 8, 2017, the district court granted Garcia a downward durational departure and sentenced him to 216 months in prison. The district court also sentenced Garcia to lifetime postrelease supervision. Thereafter, Garcia timely filed a notice of appeal.

ANALYSIS

*Prosecutorial Error*

On appeal, Garcia contends that the State committed a "golden rule" error when discussing the nature of evidence with the jury during voir dire. In particular, Garcia takes issue with the State's use of a hypothetical to ask the jury whether a single witness would ever be sufficient to convict a defendant. Garcia argues that this line of questioning encouraged the jurors to put themselves in the accuser's shoes, rather than to treat the case as neutral arbiters of fact.

We apply a two-step process to evaluate claims of prosecutorial error:

"These two steps can and should be simply described as error and prejudice. To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but

when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

"'A prosecutor should not make statements intended to inflame the passions or prejudices of the jury or to divert the jury from its duty to decide the case based on the evidence and the controlling law.'" *State v. Lowery*, 308 Kan. 1183, 1208-09, 427 P.3d 865 (2018); *State v. Tosh*, 278 Kan. 83, 90, 91 P.3d 1204 (2004), *overruled on other grounds by State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). However, it is important to note that the comments made by counsel during voir dire are not evidence. *State v. Crawford*, 300 Kan. 740, 744, 334 P.3d 311 (2014). Moreover, even if the prosecutor's actions are egregious, reversal of a criminal conviction is not an appropriate sanction if the actions are determined to satisfy the constitutional harmless error test. See *Sherman*, 305 Kan. at 114.

Here, Garcia asserts that the prosecutor committed prosecutorial error in asking potential jurors the type of evidence they would want to see in order to convict a defendant of a crime. In particular, Garcia suggests that it was inappropriate for the prosecutor to inquire about whether the State can prove a crime with only the testimony of one witness. He argues that such questions constitute an improper "golden rule" argument.

A "golden rule" argument is the suggestion that jurors should place themselves in the position of the alleged victim. "'Golden rule' arguments are generally improper because they encourage the jury to decide the case based on personal interest or bias rather than neutrality." *State v. Corbett*, 281 Kan. 294, 313, 130 P.3d 1179 (2006). Based on our review of the transcript of the voir dire in its entirety, we do not find the prosecutor's questions fall outside the wide latitude given to counsel for the State.

5

However, we do find the questions asked by the prosecutor during voir dire to be odd because this is not a "one witness" case. In addition to the testimony of the child's mother—who was an eyewitness to the incident—the State admitted into evidence the recording of Garcia's interview with police in which he made several statements against interest. Regardless, we do not find that the questions asked by the prosecutor during voir dire constitute error.

Even if the prosecutor's questions were erroneous, we do not find the alleged error prejudicial to Garcia. It is important to note that none of the prospective jurors examined during the complained—of exchange made it to the jury panel. While the other jurors overheard the exchange, the district court instructed the jury—both prior to and following the presentation of evidence—to only consider the evidence admitted during the trial and to disregard any statements made by the attorneys that were not supported by evidence. The district court also properly instructed the jury about the State's burden of proof. Absent evidence to the contrary, we presume that the jurors followed the jury instructions. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017).

Also, as indicated above, the district court admitted the recording of Garcia's interview with the police into evidence at trial and the State played the video for the jury. Even though Garcia attempts to discount the admissions he made during the interview, we find them to be significant. In particular, when asked if he took B.P. to the bedroom to do something sexual with her, Garcia said, "Yeah, I think so." He further admitted to "palm[ing] [B.P.'s] butt" while his other hand was "rubbing [his] genitals."

While he initially told investigators that he was not sexually stimulated by B.P., when asked why he was rubbing his penis while touching B.P., he responded, "I fantasize a lot." When asked about other times he had touched B.P., Garcia admitted to holding B.P. up by the butt, and that, occasionally, this has been for his sexual gratification. He

6

can also be heard admitting to the police that he was "sort of" stimulated by the child's buttocks and referred to a sexual fantasy.

To prove Garcia guilty in this case, the State needed to demonstrate beyond a reasonable doubt that Garcia lewdly fondled or touched a child under the age of 14 with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both. See K.S.A. 2017 Supp. 21-5506(b)(3)(A). We not only find that the State presented sufficient evidence to prove Garcia's guilt beyond a reasonable doubt, we also find that the evidence in the record—especially in light of Garcia's admissions—to be overwhelming. So, even if the prosecutor did commit error during voir dire, we find the alleged error to be harmless because the State has demonstrated that there is no reasonable possibility that it contributed to the verdict.

*Exclusion of Evidence*

Garcia also contends that the district court erred by preventing him from asking the child's mother about his sexual relationship with her. He argues that he should have been able to question the mother about "the normalcy of his sex life" with her in an attempt "to counter the implication that he was a pervert or deviant." In response, the State contends that the district court properly sustained its objection to this line of questioning.

"The scope of cross-examination is subject to reasonable control by the trial court." *Corbett*, 281 Kan. 294, Syl. ¶ 4. We review a district court's decision to limit cross-examination for abuse of discretion. 281 Kan. at 307-08. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

7

At trial, the only disputed issue was Garcia's intent. The fact that he may have had a "normal sex life" with the five-year-old victim's mother has little—if any—relevance to whether he was also sexually aroused at the time of the incident. Moreover, we do not find this line of questioning to be either probative or material to the issue presented in this case. Furthermore, the district court did not abuse its discretion by determining that this line of questioning was outside the scope of cross-examination. Despite Garcia's argument to the contrary, the record reveals that the State did not question the child's mother about her sexual relationship with Garcia. It is also important to note that in the recording of Garcia's interview with the police—that the State played for the jury—he agreed he had "a good sex life" with the child's mother. Likewise, in closing argument Garcia's counsel referenced the recording and argued that his client had a "normal sex life" with the child's mother.

Accordingly, we find that the testimony Garcia desired to elicit from the child's mother during cross-examination would have been neither material nor probative. As such, we find that the district court properly limited the cross-examination under the circumstance presented. Finally, even if we were to find that the district court had improperly limited cross-examination, we find that any error in limiting the cross-examination would be harmless. See *State v. Andrew*, 301 Kan. 36, 46-47, 340 P.3d 476 (2014) (using the harmless error standard for errors involving a defendant's theory of defense).

*Cumulative Error*

Finally, Garcia contends that cumulative errors in the trial denied him a fair trial. When deciding if cumulative errors necessitate a new trial, the test is whether the totality of the circumstances establishes that cumulative errors substantially prejudiced the defendant and thus, the errors denied the defendant a fair trial. We examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as

they arose. In addition, we look at the nature and number of errors and their interrelationship, if any, as well as the overall strength of the evidence. *State v. Holt*, 300 Kan. 985, 1007, 336 P.3d 312 (2014). We also note that a single error cannot constitute cumulative error. *State v. Solis*, 305 Kan. 55, 71, 378 P.3d 532 (2016).

Based on our review of the record in this case, we do not find that Garcia has shown any errors. Moreover, even if we had found one or more errors, we do not find that cumulative error denied Garcia the right to a fair trial. We, therefore, affirm his conviction.

Affirmed.