NOT DESIGNATED FOR PUBLICATION

No. 117,562

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARIA DELORIS IBARRA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed May 25, 2018. Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ATCHESON, P.J., PIERRON and STANDRIDGE, JJ.

PER CURIAM: After the Lyon County Sheriff's Department conducted a controlled buy with the help of a confidential informant (CI), the State charged Maria Deloris Ibarra with one count of possession with intent to distribute methamphetamine, one count of possession of drug paraphernalia, and one count of distribution of methamphetamine. The case was tried to a jury on January 9 and 10, 2017.

At trial, Sheriff Heath Samuels, who was a deputy with the Lyon County Sheriff's Department at the time of the incident, testified that he had stopped Cori Arb on an outstanding warrant on June 21, 2016. Samuels saw a big screen TV in the back of Arb's

1

car. Arb stated he had been storing his TVs in a garage belonging to his friend, Michael Hall, and was hoping to sell them. He was on his way to meet Ibarra to sell her the TV. Arb told Samuels he was planning to trade the TV for approximately 3 grams of methamphetamine and offered to be a confidential informant. Sheriff Samuels agreed to use Arb as a CI and, in exchange, he would not take Arb to jail that night. Samuels conducted a search of Arb and his vehicle. He gave Arb $200 in cash and a recording device.

With the recording device in his pocket, Arb went to the home of Rick Estabrooks where he had planned to meet Ibarra. Arb testified Ibarra gave him methamphetamine in exchange for the TV. He stated he gave Ibarra the cash Sheriff Samuels had given him so she could get more methamphetamine for him.

After the buy, Arb met up with law enforcement and turned over the methamphetamine and the recording device. Testing established that the bag contained 2.41 grams of methamphetamine. At trial the State played excerpts of the audio recording, which included Ibarra asking if the TV would fit in her car; Arb trying to sell his rims to Tracy Inthavongsa in exchange for marijuana and methamphetamine; and the sound of something being dropped.

Sheriff Samuels waited outside Estabrooks' home while the buy took place. Shortly after Ibarra and a friend left Estabrooks' house in Ibarra's car, Arb notified Samuels that the buy was complete. Samuels followed Ibarra and eventually stopped her for making an illegal U-turn and failing to use a turn signal.

After arresting Ibarra, Sheriff Samuels searched her purse and found a plastic baggie containing a white, crystalline substance. He searched her car and found $200 in cash in a cup holder, a big screen TV, and a set of digital scales with white residue on them. Testing established the bag contained 3.04 grams of methamphetamine. Sheriff

2

Samuels testified that methamphetamine is generally used in amounts of less than a quarter gram, so 3 grams was a significant amount for a single person to have for personal use. The residue on the scales also tested positive for methamphetamine. Sheriff Samuels explained that digital scales are often used in the distribution of narcotics.

Ibarra testified she had received a call from Jami Heins about buying a TV. Ibarra said she might be interested, and she arranged to meet Heins and Arb at Hall's garage to look at the TV. There, Arb told Ibarra he wanted "a ball" in exchange for the TV. Ibarra offered him $250 instead, and Arb agreed. Ibarra needed to go home to get the money. Arb told her he would not be at Hall's later, so they agreed to meet at Estabrooks'.

After retrieving her money, Ibarra and Inthavongsa went to Estabrooks' house. Arb was there, so Ibarra talked with Estabrooks until Arb arrived. Ibarra gave him $300. They then smoked methamphetamine and talked for a while. Afterwards, Arb and Inthavongsa helped Ibarra put the TV in her car.

Ibarra began to leave, but she remembered she had given Arb $300 and not gotten her change back. She went back to the house and Arb gave her $50. Estabrooks gave her some more cash. Ibarra placed that cash in the cup holder of her car because she was going to give it to Heins. She left Estabrooks' and was then stopped by Sheriff Samuels and arrested.

The jury convicted Ibarra of possession with intent to distribute methamphetamine and possession of drug paraphernalia. It acquitted her of distribution of methamphetamine. The district court sentenced Ibarra to a controlling term of 59 months in prison. Ibarra appeals.

*Prosecutorial Error*

On appeal, Ibarra first challenges comments the State made during its rebuttal to defense counsel's closing argument. Her defense theory at trial was that Arb had intentionally set her up. No one directly testified that Arb had intentionally set up Ibarra, but if Ibarra's testimony was true, then Arb presumably must have done so. During cross-examination, defense counsel asked Sheriff Samuels if a CI had ever "double-crossed" the police during a controlled buy. He also asked another officer if Arb would have had enough time to come up with a lie about what had happened during the controlled buy before he reported back to law enforcement.

During closing argument, defense counsel reiterated the theory that Arb had set up Ibarra. He also commented on weaknesses in the State's case. He highlighted the State's failure to call more witnesses:

> "Now, there's a lot of other people that could have testified that would have helped clear this thing up. Number 1 is Mr. Estabrooks. I could have subpoenaed him, but it's not my job. It's the State's job to prove the case to you. Ms. Heins could have been subpoenaed. She could have provided some clarification. Mr. Hall could have been subpoenaed. He could have provided perhaps some clarification, or even Tracy."

During its rebuttal, the State said the following:

> "There is no evidence of anything else occurring other than what the State has proven, only innuendo. And subpoena power is the same between the State and the defendant. The defendant doesn't have to prove a single thing. They don't have to prove any evidence to you, but the evidence that they did present does not weaken the State's evidence that was proven to you that Ms. Ibarra distributed that methamphetamine to Mr. Arb and she possessed that methamphetamine in her purse and that is with the intent to distribute it at some point. That is all that's contained within those elements."

4

Ibarra argues the State committed prosecutorial error during its rebuttal. Specifically, she points to the following comments: "There is no evidence of anything else occurring other than what the State has proven, only innuendo. And subpoena power is the same between the State and the defendant."

Ibarra asserts these statements impermissibly shifted the burden of proof to her and denied her a fair trial.

Ibarra did not object to the State's comments during closing argument. However, this does not preclude appellate review. We will review a claim of prosecutorial error made during closing even in the absence of a contemporaneous objection. *State v. Roeder*, 300 Kan. 901, 932, 336 P.3d 831 (2014), *cert. denied* 135 S. Ct. 2316 (2015).

When analyzing the propriety of a prosecutor's comments during closing argument, Kansas appellate courts now use a two-step process to identify prosecutorial error, as outlined in *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). First, the appellate court must determine "whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial." 305 Kan. at 109. If so, then the court must determine whether the error prejudiced the defendant's due process right to a fair trial using the constitutional harmlessness test identified in *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Under this standard, "[p]rosecutorial error is harmless if the State proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict." *Sherman*, 305 Kan. 88, Syl. ¶ 8.

5

Ibarra alleges the State's comments that there was no evidence to support the defense and that Ibarra had the same subpoena power as the State constitute error because they impermissibly shifted the burden of proof to her. As she correctly notes, a prosecutor may not try to shift the burden of proof to the defendant or misstate the legal standard of the burden of proof. *State v. Williams*, 299 Kan. 911, 939, 329 P.3d 400 (2014). Ibarra cites *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004), *overruled on other grounds by Sherman*, 305 Kan. 88, where the Kansas Supreme Court held that the prosecutor improperly attempted to shift the burden of proof by asking the following questions during closing: "'[I]s there any evidence that [the crime] didn't happen? Is there any evidence that the things [the victim] told you didn't happen?'" 278 Kan. at 92.

While prosecutors may not shift the burden of proof, they are still granted considerable latitude in discussing the defense's weaknesses. *State v. Peppers*, 294 Kan. 377, 397, 276 P.3d 148 (2012). A prosecutor may point out "a lack of evidence to support a defense or to corroborate a defendant's argument regarding holes in the State's case." *Williams*, 299 Kan. at 940; see, e.g., *State v. Duong*, 292 Kan. 824, 832-33, 257 P.3d 309 (2011) (holding prosecutor's arguments questioning defendant's failure to present evidence of misidentification did not improperly shift burden of proof because it was only pointing out weakness of evidence supporting defense theory). Additionally, if the defense questions why the State did not call certain witnesses, the State can respond by informing the jury that the defense has the power to subpoena witnesses. *Williams*, 299 Kan. at 939; see, e.g., *State v. Pribble*, 304 Kan. 824, 837-38, 375 P.3d 966 (2016) (holding prosecutor did not impermissibly shift burden by noting defendant had same subpoena power as State but had failed to call alibi witnesses); *State v. Naputi*, 293 Kan. 55, 63-64, 260 P.3d 86 (2011) (holding prosecutor's comment on defense's subpoena power did not impermissibly shift burden of proof as it was a reasonable response to defense argument faulting State for not calling witness).

6

The defense theory was that Arb had intentionally set up Ibarra. Ibarra and Arb had provided conflicting testimony regarding what happened at Estabrooks' house. Defense counsel argued in closing that the State had failed to call witnesses who could clarify what had happened at Estabrooks' house. The State responded to these arguments in its rebuttal, pointing out there was no evidence to support the defense theory, and Ibarra could have subpoenaed witnesses. In making these comments, the State did not burden Ibarra with disproving the occurrence of a crime as in *Tosh*. See *Williams*, 299 Kan. at 941; *Duong*, 292 Kan. at 833.

Moreover, the State immediately followed these comments by stating that Ibarra did not have to prove anything. The State also repeatedly said that it must prove the elements of the crimes beyond a reasonable doubt during its closing argument. Further, the district court properly instructed the jury on the State's burden of proof. Finally, the State presented strong evidence supporting Ibarra's two convictions. See *Sherman*, 305 Kan. at 111 (strength of evidence may secondarily impact harmlessness analysis). Thus, the State did not commit prosecutorial error by shifting the burden of proof, and even if there was error, it was harmless.

*Jury Instructions*

Ibarra argues the district court improperly instructed the jury on the burden of proof, as the given instruction precluded the possibility of jury nullification. The instruction at issue was taken from PIK Crim. 4th 51.010 and read, in part: "If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find the defendant guilty." (Emphasis added.) Ibarra takes issue with the use of the word "should," arguing it directs a verdict in favor of the State and divests the jury of its inherent power of nullification.

7

Notably, Ibarra requested the instruction she now challenges. Arguably, then, the invited error doctrine bars her claim because a litigant may not invite error at the district court level and then complain of the error on appeal. *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014). Nonetheless, the State did not brief this argument, so it has waived and abandoned it. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

Ibarra acknowledges she did not object to the challenged instruction, so we will not reverse the verdict unless she can show the giving of the instruction was clearly erroneous. See K.S.A. 2017 Supp. 22-3414(3); *State v. Pfannenstiel*, 302 Kan. 747, 752, 357 P.3d 877 (2015). In reviewing for clear error, we first consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *State v. Louis*, 305 Kan. 453, 457-58, 384 P.3d 1 (2016). If we determine the instruction was erroneous, it requires reversal if we are firmly convinced the jury would have reached a different verdict without it. *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016). In evaluating whether an instruction rises to the level of clear error, we conduct an unlimited review of the entire record. *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014).

*Reasonable Doubt Instruction*

In *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008), a panel of this court explained jury nullification as follows:

> "'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]"

The Kansas Supreme Court has held that juries have the inherent power to nullify a verdict, but the district court must not instruct on jury nullification. *Naputi*, 293 Kan. at

65-66; *State v. McClanahan*, 212 Kan. 208, ¶¶ 3, 4, 510 P.2d 153 (1973). Our Supreme Court has also held the district court may not instruct against nullification nor compel a jury to convict. *State v. Smith-Parker*, 301 Kan. 132, 164, 340 P.3d 485 (2014).

Ibarra relies on *Smith-Parker* to support her argument that the reasonable doubt instruction in her case prohibited jury nullification and compelled the jury to enter a guilty verdict. In *Smith-Parker*, the defendant challenged a reasonable doubt instruction, which read: "'If you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you *will* enter a verdict of guilty.'" 301 Kan. at 163. The *Smith-Parker* court held that the use of the word "will" in this manner comes too close to directing a verdict in favor of the State. 301 Kan. at 164.

*Smith-Parker* also revisited an earlier case, *State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49 (1980), *overruled by Smith-Parker*, 301 Kan. 132. The *Lovelace* court held that it is not error to instruct a jury that it "must" find the defendant guilty if there is no reasonable doubt regarding the State's claims. The *Smith-Parker* court disagreed and overruled *Lovelace*, finding that the use of the word "must" also comes too close to compelling a guilty verdict. 301 Kan. at 164.

Citing to *Smith-Parker*, Ibarra argues that the reasonable doubt instruction in her case also directs the jury to enter a guilty verdict. She notes that *Smith-Parker* held that a court cannot instruct a jury that it "must" enter a guilty verdict. She argues that "should" is a synonym for "must," so a court also errs in instructing a jury it "should" enter a guilty verdict.

In *State v. Allen*, 52 Kan. App. 2d 729, 372 P.3d 432 (2016), this court addressed a similar argument. The court upheld a reasonable doubt jury instruction based on PIK Crim. 4th 51.010, which also read "If you have no reasonable doubt as to the truth of

9

each of the claims required to be proved by the State, you *should* find the defendant guilty." 52 Kan. App. 2d at 733. The court found the use of the word "should" did not direct a verdict for the State:  "Unlike the words 'must,' 'shall,' and 'will,' the word 'should' does not express a mandatory, unyielding duty or obligation; instead, it merely denotes the proper course of action and encourages following the advised path." 52 Kan. App. 2d 729, Syl. ¶ 5.

In *State v. Singleton*, No. 112,997, 2016 WL 368083, at *6 (Kan. App.) (unpublished opinion), *rev. denied* 305 Kan. 1257 (2016), the court further elucidated the difference between "should," "must," and "will":

"But as every teacher instructing a class knows, and as every parent admonishing a child knows, should is less of an imperative than must or will. [Citation omitted.] Nutritionists urge that we all should eat our vegetables. But that does not constitute a directive to have recalcitrant diners force-fed their vegetables if they do not comply. A parent admonishing a child that he should eat his lima beans is clearly less of an imperative than the phrase every child has heard at one time or another, 'You *will* eat your lima beans!' Should as used in this instruction is not the equivalent of 'must' or 'will' used in the instructions discussed in *Lovelace* and *Smith-Parker*. *Should* is advisory. It is not an imperative."

Numerous other panels of this court have reached the same conclusion as *Allen* and *Singleton*. See, e.g., *State v. White*, 53 Kan. App. 2d 44, 53-54, 384 P.3d 13 (2016), *rev. denied* 306 Kan. 1331 (2017); *State v. Brown*, No. 115,613, 2017 WL 5015486, at *8-9 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* December 4, 2017; *State v. Hernandez-Cartagena*, No. 113,862, 2017 WL 3827628, at *3-4 (Kan. App. 2017) (unpublished opinion), *rev. denied* 307 Kan. ___ (2018); *State v. Hastings*, No. 112,222, 2016 WL 852857, at *3-5 (Kan. App. 2016), *rev. denied* 306 Kan. 1324 (2017).

Ibarra argues that *Allen* was wrongly decided. She claims that "[a]lthough the word 'should' may not carry the exact same weight as the words 'must' or 'will,' the statement that a jury 'should' enter a verdict is still an incorrect statement of the law." She points to K.S.A. 2017 Supp. 60-247(d), which states that "jurors must swear or affirm to try the case conscientiously and return a verdict according to the law and the evidence." She claims this statute provides that the jury may use its conscience in reaching a verdict, but there is no statute that states a jury has any obligation to return a guilty verdict if the State proves its case beyond a reasonable doubt.

Ibarra's argument ignores the wording of the very statute she is relying on for support. Under K.S.A. 2017 Supp. 60-247(d), jurors must swear an oath to reach a verdict based on the law and evidence. "While under the rubric of jury nullification jurors have the power to ignore the law and the evidence, doing so is a clear violation of their oaths as jurors." *State v. Cash*, No. 111,876, 2015 WL 5009649, at *4 (Kan. App. 2015) (unpublished opinion).

The reasoning in *Allen* is persuasive. The reasonable doubt instruction did not impermissibly instruct against jury nullification. Also, there is no convincing argument that the verdict would have been different had the district court not given the instruction at issue. Granted, Arb and Ibarra provided conflicting testimony regarding the distribution charge, but the jury acquitted her of that charge. As for the other two charges, there was no real dispute regarding Ibarra's possession of the methamphetamine in her purse and the scales in her car. Sheriff Samuels testified the amount of methamphetamine Ibarra had was excessive for personal use. Ibarra provides no reason why the jury would have chosen to nullify the verdict for these charges. Thus, Ibarra cannot establish clear error.

*Sentencing*

Ibarra argues the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it increased her sentence based on her criminal history without first requiring the State to prove her criminal history to a jury beyond a reasonable doubt. She did not object to the use of her criminal history in this manner, but the Kansas Supreme Court has held that appellate courts can consider the application of *Apprendi* for the first time on appeal. *State v. Anthony*, 273 Kan. 726, 727, 45 P.3d 852 (2002). Ibarra concedes that the Kansas Supreme Court has already rejected this argument in *State v. Ivory*, 273 Kan. 44, 46-48, 41 P.3d 781 (2002). She raises it now to preserve it for possible federal review.

We are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no such indication here. Thus, the district court did not err in using Ibarra's criminal history without first requiring the State to prove it beyond a reasonable doubt to a jury.

Affirmed.

\* \* \*

ATCHESON, J., concurring: I am not persuaded the prosecutor's closing argument was pristine. The statement that the jurors had no evidence other than what the State presented and proved seems to me to be functionally indistinguishable from what the Kansas Supreme Court found to be impermissible burden-shifting in *State v. Tosh*, 278 Kan. 83, 92, 91 P.3d 1204 (2004), *overruled on other grounds by State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016). The error was mitigated by other aspects of the prosecutor's closing argument. And it was harmless in light of the compelling evidence against Maria Deloris Ibarra. So I, too, would affirm.