No. 121,160

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

GEORGE LOWELL BROWN II,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

SYLLABUS BY THE COURT

1.

When a district court considers a K.S.A. 60-1507 motion, it may: (a) determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (b) determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held after appointment of counsel. If the court then determines there is no substantial issue, the court may deny the motion; or (c) determine from the motion, files, records, or preliminary hearing that there is a substantial issue requiring an evidentiary hearing.

2.

When a district court held a full evidentiary hearing on an ineffective assistance of counsel claim under K.S.A. 60-1507, an appellate court reviews a district court's findings of fact and conclusions of law under a mixed standard of review. The appellate court examines the record and determines whether substantial competent evidence supports the district court's factual findings and determines whether the court's factual findings support its conclusions of law. The appellate court then reviews the district court's conclusions of law de novo.

3.

A district court is not required to entertain successive K.S.A. 60-1507 motions on behalf of the same movant unless there are exceptional circumstances.

4.

K.S.A. 60-1507(f) places a time limit on filing an action under that statute of one year from the date the movant's direct appeal becomes final, unless the time limitation is extended by the court to prevent a manifest injustice. A K.S.A. 60-1507 movant has the burden of establishing manifest injustice.

5.

Appellate courts employ a two-step analysis when evaluating claims of reversible prosecutorial error. These two steps are simply described as error and prejudice. To determine prosecutorial error, an appellate court decides whether the act complained of falls outside the wide latitude afforded to prosecutors to conduct the State's case in a way that does not offend the defendant's constitutional right to a fair trial. If it finds error, the appellate court determines if that error prejudiced the defendant's right to a fair trial.

6.

In *State v. Tosh*, 278 Kan. 83, 93, 91 P.3d 1204 (2004), the Supreme Court set forth a three-factor test to evaluate the prejudice step for reversible prosecutorial misconduct:  (1) whether the misconduct was gross and flagrant, (2) whether it was motivated by prosecutorial ill will, and (3) whether the evidence was of such a direct and overwhelming nature that the misconduct would likely have had little weight in the minds of jurors.

7.

In *State v. Sherman*, 305 Kan. 88, 378 P.3d 1060 (2016), the Supreme Court overruled portions of the *Tosh* analysis and adopted a new framework to evaluate the

prejudice step for reversible prosecutorial error, which requires the court to determine whether the State has carried its burden to demonstrate beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.

8.

Generally, an opinion changing the law acts prospectively, applying to all cases, state or federal, pending on direct review or not yet final.

9.

Where both the alleged errors occurred and the direct appeals were finalized before *Sherman*, an appellate court analyzes a claim of prosecutorial error alleged in the context of a K.S.A. 60-1507 ineffective assistance of counsel claim using the reversibility framework in effect at the time of trial.

Appeal from Cowley District Court; JOHN E. SANDERS, judge. Opinion filed September 25, 2020. Affirmed.

*Kristen B. Patty*, of Wichita, for appellant.

*Michael K. Henson*, deputy county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before WARNER, P.J., STANDRIDGE and GARDNER, JJ.

STANDRIDGE, J.:  Following a jury trial, George Lowell Brown II was convicted of one count of aggravated indecent liberties with a child and one count of lewd and lascivious behavior. The district court sentenced Brown to life in prison with a mandatory minimum term of 25 years. On appeal, the Kansas Supreme Court affirmed his convictions and his life sentence. Brown later filed a timely first K.S.A. 60-1507 motion

3

alleging various claims, including one of ineffective assistance of counsel. The district court summarily denied Brown's first motion, a finding which this court affirmed on appeal. More than a year later, Brown filed an untimely second 60-1507 motion, alleging that both his trial counsel and direct appeal counsel were ineffective for various reasons. The district court appointed counsel to represent Brown and held an evidentiary hearing. Following the hearing, the district court denied Brown's second motion as successive and untimely and alternatively denied Brown's motion on the merits. Brown filed a motion to alter or amend the district court's ruling and, after another hearing, the district court denied that motion. Brown now appeals the dismissal of his second 60-1507 motion, specifically alleging that he established exceptional circumstances for the district court to entertain his successive motion and that he established manifest injustice to warrant extension of the one-year filing deadline. For the reasons stated below, we affirm the district court's ruling because its findings were supported by substantial competent evidence and it correctly found that Brown's second 60-1507 motion was successive and untimely.

FACTS

The facts of the underlying criminal case are largely irrelevant in this appeal. However, any facts that are necessary to the analysis will be included where needed. Further details about the underlying criminal case are extensively summarized in *State v. Brown*, 295 Kan. 181, 185-87, 284 P.3d 977 (2012) (*Brown I*).

On October 7, 2009, a jury convicted Brown of one count of aggravated indecent liberties with a child and one count of lewd and lascivious behavior. In November 2009, the district court sentenced Brown to life in prison and ordered him to serve a mandatory minimum term of 25 years pursuant to Jessica's Law—also known as the "hard 25." On direct appeal, the Kansas Supreme Court affirmed Brown's convictions and his life sentence, finding, among other things, that (1) there were no alternative means issues

4

within the aggravated indecent liberties and lewd and lascivious behavior charges, (2) the district court did not abuse its discretion in allowing the State to reopen its case-in-chief to present limited testimony as to Brown's age, and (3) certain comments by the prosecutor during jury selection and closing arguments constituted error but the error was harmless. See *Brown I*, 295 Kan. at 202-03, 210, 211-15. The Kansas Supreme Court issued its mandate on September 17, 2012.

Brown filed a timely first pro se motion under K.S.A. 60-1507 on June 28, 2013. In this first 60-1507 motion, Brown argued that the district court deprived him of his right to due process by allowing the State to reopen its case-in-chief at trial and that his trial counsel was ineffective for failing to preserve his right to prepare an adequate defense. The district court summarily denied Brown's motion on July 16, 2013. Brown appealed the ruling and argued for the first time on appeal that his direct appeal counsel was deficient by only raising two of the seven factors courts must consider in deciding whether to allow a party to reopen its case-in-chief at trial. See *Brown v. State*, No. 110,644, 2014 WL 2871400, at *2-3 (Kan. App. 2014) (unpublished opinion) (*Brown II*). In June 2014, this court rejected Brown's new argument on appeal and affirmed the district court's summary dismissal. *Brown II*, 2014 WL 2871400, at *2-3.

On October 2, 2015—over three years after the Kansas Supreme Court issued its mandate in Brown's direct appeal—Brown filed a second pro se 60-1507 motion. In his memorandum and affidavit in support of the motion, Brown alleged his trial counsel and his direct appeal counsel were ineffective. Brown argued that his trial counsel was ineffective for several different reasons:  (1) counsel failed to seek a lesser included crime of aggravated indecent solicitation of a child, (2) counsel failed to object to the investigating deputy's testimony about using "finding words" or RATAC interviewing techniques as improper expert testimony, (3) counsel failed to object to the introduction at trial of the victim's recorded police interview, (4) counsel failed to object to the prosecutor's alleged "consciousness of guilt" closing argument, (5) counsel failed to

5

present an expert witness to testify about child interviewing techniques, (6) counsel failed to file and pursue a motion for judgment of acquittal as to the aggravated indecent liberties conviction, and (7) counsel failed to offer or request a limiting instruction on how prior consistent statements may only be used to corroborate a victim's testimony. Brown argued his direct appeal counsel was ineffective because counsel failed to include the State's consciousness of guilt closing argument in the prosecutorial error argument on direct appeal.

Apparently recognizing that his second K.S.A. 60-1507 motion was procedurally barred as untimely and successive, Brown provided several reasons why the district court should make an exception and consider his motion anyway. Specifically, he claimed (1) he did not have nor could he afford any legal assistance in drafting and filing his previous 60-1507 motion, (2) he was afraid of seeking help from other inmates at his previous prison due to the nature of his conviction, (3) he could not go into protective custody at his previous prison because he would have been denied access to legal materials, (4) the Appellate Defender Office failed to provide him with legal aid resources following his direct appeal after telling him he would receive that information, and (5) he could only safely receive assistance from other inmates and did so once he was transferred to a different facility housing like offenders.

The district court appointed counsel (habeas counsel) to represent Brown and held a full evidentiary hearing on January 21, 2016. Judge James T. Pringle, the same judge who presided over Brown's underlying criminal matter, also presided over this evidentiary hearing. Brown's habeas counsel called him as a witness at the hearing, but Brown testified only about the alleged ineffective assistance of trial counsel in failing to object to the State's introduction at trial of the victim's recorded interview without also introducing the transcript from that interview as required by statute.

6

After Brown's testimony, habeas counsel emphasized three issues in Brown's second K.S.A. 60-1507 motion as having particular merit. First, Brown's trial counsel failed to object to the introduction of a videotape of the alleged victim's testimony under K.S.A. 22-3433, in part because no written transcript was produced by the State. Habeas counsel argued that Brown was prejudiced by his trial counsel's performance because the lack of an objection prevented the issue from being raised on appeal and because the video contained additional details not testified to by the victim at trial. Second, habeas counsel emphasized trial counsel's failure to object to the State's consciousness of guilt statement in closing argument. Had trial counsel objected to the prosecutor's allegedly improper statement that Brown's demeanor during his interview with police showed that he was guilty of the crimes charged, the issue could have been raised on direct appeal to bolster his other claims of prosecutorial error. Third, habeas counsel emphasized Brown's trial counsel failed to object to the investigating deputy's testimony about her use of the finding words technique with the victim, which habeas counsel asserted is a scientific technique requiring expert testimony. After discussing these three issues, habeas counsel advised the court that Brown was not abandoning the other issues in his second 60-1507 motion; rather, Brown would rely on the arguments presented in his written motion for the other issues not specifically discussed at the evidentiary hearing.

The State presented no additional evidence but rebutted Brown's claims and simultaneously argued that the district court should deny Brown's motion as successive. The State asserted that Brown's ineffective assistance of counsel claims amounted to mere trial errors that should have been raised on direct appeal or in his first 60-1507 motion, and Brown failed to meet his burden to establish exceptional circumstances existed to overcome the successive filing hurdle. The district court took the matter under advisement and informed the parties it would issue a written order.

On March 7, 2016, Judge Pringle issued a lengthy order denying Brown's 60-1507 motion. At the outset, the district court denied Brown's motion as successive because

Brown had previously alleged ineffective assistance of counsel in his first 60-1507 motion, and it denied Brown's motion as untimely because Brown failed to establish the requisite manifest injustice to extend the one-year filing deadline. Alternatively, the district court denied Brown's motion on the merits.

Brown's habeas counsel filed a notice of appeal on March 8, 2016. While the matter was pending in this court, Brown filed a pro se motion with the district court to alter or amend the court's order denying his 60-1507 motion. He also filed a pro se motion to stay the appeal pending the district court's ruling on the motion to alter or amend the judgment. At some point, Brown was appointed new habeas counsel and he moved this court to dismiss his appeal. This court granted Brown's voluntary request and dismissed the appeal on February 13, 2017.

The matter proceeded in the district court before Senior Judge John E. Sanders. Judge Sanders held a pretrial conference on March 27, 2018. It is unclear what arguments the parties made at this hearing as there was no record created for it. However, it appears that Judge Sanders took the matter under advisement, requested the parties obtain reports from their respective experts on child interviewing techniques, and advised he would issue a written ruling as to whether any further hearings were necessary.

On February 5, 2019, Judge Sanders issued his order denying Brown's motion to alter or amend Judge Pringle's ruling and dismissing Brown's 60-1507 request for relief. The district court noted that Judge Pringle already found that having an expert witness to discuss child interviewing techniques would not have discredited the victim's testimony or changed the outcome of the trial in this case. The court reasoned that Brown should not get "another bite of the apple" to argue why an expert is necessary, and it found nothing that would compel it to reverse Judge Pringle's ruling. The court noted that in addition to the incriminating evidence presented throughout trial, Brown himself at least partially confirmed some of the victim's allegations. Noting it had reviewed the proffered

expert reports, the court found that calling these witnesses would "change nothing" and "inject further confusion" into the proceedings.

Brown timely appealed the denial of his second 60-1507 motion.

ANALYSIS

When considering a K.S.A. 60-1507 motion, a district court has three options:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

The standard of review depends upon which approach the district court used to dispose of the motion. When, as here, the district court held a full evidentiary hearing on an ineffective assistance of counsel claim under K.S.A. 60-1507, an appellate court reviews a district court's findings of fact and conclusions of law under a mixed standard of review. The appellate court examines the record and determines whether substantial competent evidence supports the district court's factual findings and determines whether the court's factual findings support its conclusions of law. The appellate court then reviews the district court's conclusions of law de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

The district court denied Brown's second 60-1507 motion for relief on grounds that it was successive and untimely. Although the court went on to discuss the underlying

9

merits of Brown's ineffective assistance of counsel claims, it did so as an alternative reason for denying the motion and as a means to facilitate a decision about whether considering the merits would prevent a manifest injustice, which would excuse the untimely nature of the filing.

K.S.A. 2019 Supp. 60-1507 sets forth restrictions on courts' consideration of untimely and successive motions. In this case, neither analysis requires fact-finding. So we first must find that Brown has cleared these two procedural hurdles before we can move on to address the underlying merits of his K.S.A. 60-1507 motion. This is Brown's second 60-1507 motion in which he alleges various ineffective assistance of counsel claims. To avoid dismissal of his motion as successive, Brown must establish that exceptional circumstances existed to prevent him from raising these issues in his first 60-1507 motion. See K.S.A. 60-1507(c); *Thuko v. State*, 310 Kan. 74, 81, 444 P.3d 927 (2019). And because he filed his second motion over three years after the Kansas Supreme Court issued its mandate in Brown's direct appeal, Brown also must establish manifest injustice. See K.S.A. 60-1507(f)(1) and (2) (one-year time limit to file motion may be extended by the court only to prevent a manifest injustice).

1. *Successive motion*

K.S.A. 2019 Supp. 60-1507(c) and Supreme Court Rule 183(d) (2020 Kan. S. Ct. R. 223) provide that a district court is not required to entertain successive motions on behalf of the same prisoner. This rule prohibiting successive motions, however, is subject to limited exceptions. *Thuko*, 310 Kan. at 84. To avoid having a second or successive K.S.A. 60-1507 motion dismissed as an abuse of remedy, the movant must establish exceptional circumstances. "Exceptional circumstances" are defined as unusual events or intervening changes in the law that prevented the movant from raising the issues in the preceding 60-1507 motion. *Beauclair v. State*, 308 Kan. 284, 304, 419 P.3d 1180 (2018).

In his brief, Brown alleges six distinct circumstances he contends are exceptional: (1) He did not have nor could he afford any legal assistance in drafting and filing his previous 60-1507 motion, (2) he was afraid of seeking help from other inmates at his previous prison due to the nature of his convictions, (3) he could not go into protective custody at his previous prison because he would have been denied access to legal materials, (4) the Appellate Defender Office failed to provide him with legal aid resources following his direct appeal after telling him he would receive that information, (5) he could only safely receive assistance from other inmates and did so once he was transferred to a different facility housing like offenders, and (6) his ineffective assistance of counsel claims constitute such a circumstance.

The first five reasons Brown provides can be lumped into two similar categories: Brown either lacked legal assistance in filing his motions or he lacked access to legal resources for various reasons. As Kansas appellate courts have long established, none of these reasons constitute valid exceptional circumstances that prevented Brown from raising his ineffective assistance of counsel claims in his first K.S.A. 60-1507 motion. See, e.g., *Sherwood v. State*, 310 Kan. 93, 101, 444 P.3d 966 (2019) (finding that movant's inability to obtain legal assistance is not valid basis for manifest injustice); *Brown v. State*, 278 Kan. 481, 483, 101 P.3d 1201 (2004) ("[T]here is no constitutional right to effective assistance of legal counsel on collateral attacks because they are civil, not criminal, actions."); *Harris v. State*, No. 120,942, 2020 WL 1482424, at *3 (Kan. App. 2020) (unpublished opinion) (finding that movant's limited access to legal materials was insufficient to show manifest injustice), *petition for rev. filed* April 24, 2020; *Martinez v. State*, No. 120,488, 2019 WL 6798971, at *3 (Kan. App. 2019) (unpublished opinion) ("A prisoner's lack of legal knowledge, training, and familiarity with the rules of procedure fails to meet [the manifest injustice] standard."), *rev. denied* 311 Kan. ___ (July 28, 2020); *Kelly v. State*, No. 114,158, 2016 WL 3031256, at *5 (Kan. App. 2016) (unpublished opinion) (finding that lack of access to legal resources due to time spent in administrative segregation is not persuasive circumstance for establishing manifest

injustice); *Conley v. State*, No. 111,777, 2015 WL 7434746, at *3-4 (Kan. App. 2015) (unpublished opinion) (finding that movant's limited legal knowledge, lack of access to law library, and numerous prison transfers did not rise to level of exceptional circumstances or manifest injustice).

While Brown is correct that an ineffective assistance of counsel claim may constitute an exceptional circumstance, the claims that Brown alleges in this second K.S.A. 60-1507 motion occurred before he filed his first 60-1507 motion. See *Thuko*, 310 Kan. at 84; *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009) ("Ineffective assistance of counsel can qualify as an exceptional circumstance."). So Brown's current allegations of ineffective assistance by trial counsel and direct appeal counsel do not constitute an unusual or intervening event that would excuse omitting the issue in his first 60-1507 motion. See *Thuko*, 310 Kan. at 84. What is more, Brown's first motion alleged that he had been denied effective assistance of trial counsel—a claim which the district court summarily denied and this court rejected. Additionally, his appeal of that denial also alleged he was denied effective assistance of direct appeal counsel—a claim this court also rejected. See *Brown II*, 2014 WL 2871400, at *2-3. By alleging ineffective assistance of counsel claims in his second 60-1507 motion that he could have raised in his first motion, Brown seeks successive consideration of the same claim. The fact that the argument he now offers in support of the ineffective assistance of counsel claim is different than the argument he previously offered in support of the claim is immaterial. The language in K.S.A. 60-1507(c) is clear: a sentencing court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner. Our Supreme Court held that "'[a movant] in a K.S.A. 60-1507 motion is presumed to have listed all grounds for relief and a subsequent motion need not be considered in the absence of [a showing of] circumstances justifying the original failure to list a ground.'" *State v. Trotter*, 296 Kan. 898, 904, 295 P.3d 1039 (2013); see also *Thuko*, 310 Kan. at 84-85; *Manco v. State*, 51 Kan. App. 2d 733, 739, 354 P.3d 551 (2015) ("'[S]uccessive post-conviction motions alleging ineffective assistance of counsel are an abuse of remedy

12

and should be denied even if based . . . upon distinct allegations of ineffectiveness. *Absent assertion of exceptional circumstances*, all claims of ineffective assistance of trial counsel must be asserted together in order to avoid summary denial as successive, even though a later assertion alleges different or distinct factual bases for the purported ineffectiveness.").

Brown has failed to prove the requisite exceptional circumstances that would excuse the filing of his successive 60-1507 motion. Because he failed to establish these circumstances, the district court did not err in denying Brown's second 60-1507 motion as successive.

2. *Manifest injustice*

Since 2003, K.S.A. 60-1507(f) has required individuals to bring their K.S.A. 60-1507 motions within one year of (1) the termination of state appellate jurisdiction over a direct appeal or (2) the United States Supreme Court's denial of a petition for writ of certiorari. See K.S.A. 2019 Supp. 60-1507(f); *Noyce v. State*, 310 Kan. 394, 399, 447 P.3d 355 (2019). Brown filed the present 60-1507 motion on October 2, 2015, over three years after the Kansas Supreme Court issued its mandate in Brown's direct appeal. Therefore, the motion is untimely.

Although the one-year time limitation may be extended by the district court, that extension can be granted only to prevent a manifest injustice. K.S.A. 2019 Supp. 60-1507(f)(2). In 2014, our Supreme Court decided *Vontress v. State*, 299 Kan. 607, 325 P.3d 1114 (2014), in which the court identified three bases for determining whether a movant has demonstrated manifest injustice in order to avoid the one-year deadline for filing a K.S.A. 60-1507 motion. Those bases are as follows:

"whether (1) the movant provides persuasive reasons or circumstances that prevented him or her from filing the 60-1507 motion within the 1-year time limitation; (2) the merits of the movant's claim raise substantial issues of law or fact deserving of the district court's consideration; and (3) the movant sets forth a colorable claim of actual innocence, *i.e.*, factual, not legal, innocence." 299 Kan. at 616.

In response to *Vontress*, the Legislature amended K.S.A. 60-1507(f), effective July 1, 2016, to provide:

"For purposes of finding manifest injustice under this section, the court's inquiry shall be limited to determining why the prisoner failed to file the motion within the one-year time limitation or whether the prisoner makes a colorable claim of actual innocence. As used herein, the term actual innocence requires the prisoner to show it is more likely than not that no reasonable juror would have convicted the prisoner in light of new evidence." K.S.A. 2016 Supp. 60-1507(f)(2)(A).

This legislative action effectively eliminated the second *Vontress* factor for determining manifest injustice when a K.S.A. 60-1507 motion is untimely filed. Notably, however, our Supreme Court has held this amended statute does not apply retroactively to K.S.A. 60-1507 motions filed before July 1, 2016. *White v. State*, 308 Kan. 491, Syl. ¶ 1, 421 P.3d 718 (2018). Again, Brown's current motion was filed in October 2015, so the new manifest injustice standard is inapplicable. Rather, the *Vontress* analysis controls. *White*, 308 Kan. at 503.

As the person seeking an extension of the time limit, Brown "bears the 'burden to establish manifest injustice by a preponderance of the evidence.'" *Noyce*, 310 Kan. at 399 (quoting *White*, 308 Kan. at 496; citing Supreme Court Rule 183[g] [2018 Kan. S. Ct. R. 223]). In conducting a manifest injustice inquiry, courts must consider the *Vontress* factors under the totality of the circumstances rather than balancing factors against each

other. Given the required analysis for each of the *Vontress* factors, we will conduct our analysis of the first and third factors before addressing the second factor.

a. *Manifest injustice under* Vontress *factor 1*

As to the first factor—reasons or circumstances explaining the failure to meet the one-year time limit—Brown incorporates the same circumstances he alleged as bases for finding exceptional circumstances. For the reasons stated in our analysis above, we similarly find Brown has failed to provide valid reasons for failing to raise the ineffective assistance of counsel arguments within the one-year time limit. Our analysis on that issue is incorporated and applied here. Because Brown fails to establish any valid reasons explaining his failure to file his second 60-1507 motion within the one-year time limit, he is not entitled to relief under the first *Vontress* factor.

b. *Manifest injustice under* Vontress *factor 3*

The third *Vontress* factor requires this court to look at whether Brown asserted a colorable claim of actual innocence. Brown made no such assertion in his original motion. On appeal, Brown argues that he is serving a life sentence because he is "weird" and that inadvertent or innocent acts—i.e., sleeping naked with the victim in this case, rubbing lotion on the victim's body when she asked, and scratching victim's back—were given criminal interpretations. See *Brown I*, 295 Kan. at 186-87. This is not a colorable claim of innocence, and in fact, it is counter to any such claim because it corroborates at least some of the victim's trial testimony in the underlying criminal case. Because Brown fails to assert a colorable claim of innocence, he is not entitled relief under the third *Vontress* factor.

c. *Manifest injustice under* Vontress *factor 2*

Under the second factor, this court must consider whether the merits of Brown's claims raise substantial issues of law or fact deserving of the district court's consideration. It is only in this context that we now review the individual claims set forth in Brown's motion. To prevail on an ineffective assistance of counsel claim, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent counsel's deficient performance. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

The benchmark for reviewing an ineffective assistance of counsel claim is whether the attorney's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a fair and just result. *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "[A] fair assessment of attorney performance requires that every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Crowther v. State*, 45 Kan. App. 2d 559, 564, 249 P.3d 1214 (2011).

16

(1) *Lesser included offense*

Brown's first ineffective assistance of counsel claim is that his trial counsel failed to request a lesser included charge. Brown was charged with aggravated indecent liberties with a child in violation of K.S.A. 21-3504(a)(3)(A), which provides:

> "(a) Aggravated indecent liberties with a child is:
> . . . .
> (3) engaging in any of the following acts with a child who is under 14 years of age:
> (A) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both."

Brown claims trial counsel was deficient for failing to request the jury be permitted to consider whether he committed the crime of aggravated indecent solicitation of a child in violation of K.S.A. 21-3511(a), which he asserts is a lesser included charge of aggravated indecent liberties with a child. "Aggravated indecent solicitation of a child is: (a) Enticing or soliciting a child under the age of 14 years to commit or to submit to an unlawful sexual act." K.S.A. 21-3511(a). An "unlawful sex act" is defined, among other things, as "any . . . aggravated indecent liberties with a child . . . [or] lewd and lascivious behavior . . . as defined in this code." K.S.A. 21-3501(4).

The controlling test for determining whether aggravated indecent solicitation of a child is a lesser include offense in this case is found in K.S.A. 21-3107(2), which provides in relevant part:

> "(2) Upon prosecution for a crime, the defendant may be convicted of either the crime charged or a lesser included crime, but not both. A lesser included crime is:
> . . . .

17

(b) a crime where all elements of the lesser crime are identical to some of the elements of the crime charged."

In comparing the statutes, we necessarily conclude that aggravated indecent solicitation of a child charge is not a lesser included offense of aggravated indecent liberties with a child. Under K.S.A. 21-3107(2)(b), all of a lesser included offense's elements must appear in some of the elements of the greater crime charged. To prove aggravated indecent solicitation of a child, the State must establish not only all of the elements of the crime of aggravated indecent liberties with a child or some other unlawful sex act but, in addition, must prove that a defendant enticed or solicited a child to commit or submit to an unlawful sex act. There are more elements in an aggravated indecent solicitation of a child charge than found in the aggravated indecent liberties with a child charge. As such, the record conclusively shows that Brown's trial counsel was not deficient for failing to request the lesser included instruction.

(2) *Interviewing protocol*

In his second claim, Brown asserts trial counsel was deficient by failing to object to the investigating deputy's testimony about using the finding words protocol when interviewing the child victim in this case. In his motion, he summarily argued that the deputy was allowed to testify without objection about her training and knowledge of the finding words or RATAC technique and that such testimony was improper expert opinion. But the record reflects that the deputy never testified as to any personal opinions about whether Brown molested the victim based on these interview techniques, nor did she testify as to the victim's credibility during the interview. She only testified as to her training and experience using the technique and how that guided her interview with the victim in this case. See *Waddell v. State*, No. 120,800, 2020 WL 2502200, at *9 (Kan. App. 2020) (unpublished opinion) (finding that detective investigating allegations of sexual abuse of child was not an expert when detective merely testified about his

18

investigative process and made no opinions about whether abuse actually occurred or whether defendant perpetrated said abuse). Brown provides us with no authority to support his legal proposition that a law enforcement officer trained in using the finding words technique is not allowed to testify as to their training, experience using the technique, and application of that technique. Accordingly, Brown fails to establish his trial counsel was deficient by failing to object to the investigating deputy's testimony.

### (3) *Lack of transcript*

In his third argument, Brown claims trial counsel was ineffective by failing to object to the introduction of the victim's recorded interview. Specifically, he alleges that the recorded interview was inadmissible because the State failed to provide the defense with a transcript of the child's interview prior to trial as required by K.S.A. 22-3433(a)(8). At the time of his trial, this statute provided:

> "(a) In any criminal proceeding in which a child less than 13 years of age is alleged to be a victim of a crime, a recording of an oral statement of the child, made before the proceeding began is admissible in evidence if:
> . . . .
> (8) . . . a copy of a written transcript is provided to the parties." K.S.A. 22-3433(a)(8).

Brown claims trial counsel was deficient for failing object to the introduction of the victim's recorded interview without first receiving the interview transcript. We will assume without deciding for purposes of our analysis that trial counsel's failure to object constitutes deficient performance. In support of prejudice, Brown first argues the video recording that was played for the jury significantly strengthened the State's case against him at trial. In making this argument, Brown seems to suggest that if trial counsel had objected to the admissibility of the recorded interview based on a violation of K.S.A. 22-3433(a)(8), the court would have deemed the recording inadmissible. But there is no

evidence in the record to suggest that the trial court would have prohibited the State from introducing the recorded interview into evidence based on the State's failure to adhere to the statutory requirements. It seems just as likely that the trial court would have given the State an opportunity to provide Brown with a written transcript for review, which would have then rendered the recording admissible under the statute. Although Brown summarily cites to the State's violation of K.S.A. 22-3433(a)(8), he fails to explain how he was prejudiced by the State's failure to provide a written transcript before it introduced the recorded interview into evidence. The transcript is a verbatim written transcription of every statement in the interview. Significant to our analysis, introduction of the written transcript at trial would not have prohibited the State from introducing the video recording at trial. The rule requiring the State to provide a transcript is meant to supplement, not supplant, the introduction of a video recording at trial. Conspicuously missing from Brown's argument is an assertion that the written transcript would have bolstered any part of his defense to the charges lodged against him.

In another attempt to show prejudice, Brown relies on *State v. Waddell*, No. 100,517, 2011 WL 767836 (Kan. App. 2011) (unpublished opinion). In *Waddell*, a panel of this court found that the overwhelming evidence of defendant's guilt centered on statements the child victim made in her recorded interview or in the presence of other interviewers and investigators—not from what the victim testified to at trial. The panel determined that without the video evidence and the additional hearsay testimony about the victim's interview statements, it is likely there would not have been sufficient evidence presented at trial to convict the defendant. Based on these determinations, the court found reversible error where the recorded interview was introduced into evidence without a transcript being provided to the defense. 2011 WL 767836, at *3-4.

But the facts here are different than those in *Waddell*. Here, the victim was available to testify at the jury trial and largely recounted the information she provided to the deputy in her interview: how she and Brown slept naked together in Brown's bed,

20

how Brown laid on top of her while they were naked, how Brown put his arms around her and snuggled her, how he touched her privates, how he rubbed lotion all over her body, how Brown made her wear only an apron while cooking breakfast, and how Brown showed her his privates. Brown also corroborated some of this evidence in his own interview with police—i.e., he admitted to sleeping naked with the victim in his bed, rubbing lotion on the victim, and scratching the victim's back. See *Brown I*, 295 Kan. at 186-87. Police even found physical evidence to corroborate the victim's story, such as five bottles of lotion retrieved from the headboard of Brown's bed and the apron the victim wore at Brown's request.

Having considered the entire record, we find beyond a reasonable doubt that any alleged deficiency in trial counsel's failure to object to introduction of the recorded interview without first being provided a written transcript did not affect the outcome of the trial.

### (4) *Consciousness of guilt*

Brown's next claim is that his trial counsel was ineffective for failing to object during closing argument to the prosecutor's comment on Brown's demeanor in a video recording of his interview by police. In its memorandum opinion, the habeas court set forth the relevant facts related to this claim:

> "At the end of Deputy McDonald's interview of Brown, she left the room. At that point the video showed Brown tilt his head down onto his fists and then his open hands covering his face. There was no indication he was crying and he didn't say anything. During the prosecutor's closing argument, he stated the following:
>
>> "'Watch the defendant's video. And the reason we played that video all the way to the conclusion is when Deputy McDonald left, what did the defendant do? (Gesture.)
>>
>> "'I have a phrase for that, but I don't think I should use it in open court. I call it an Oh, shucks moment in open court. He knew what he did was wrong. He knew he had

21

been caught. Watch the video. Watch his testimony. No, this never happened. No, this never happened. No, this never happened. Well, this part happened. Oh, well, that part happened. Oh, well, this part happened. Another 15 minutes, who knows what he would have said.

"'Ladies and gentlemen, it's for you to decide what happened. Watch that video. Watch [the victim].'"

Brown characterized the prosecutor's statement as a "consciousness of guilt" argument because the prosecutor urged the jury to view Brown's demeanor at the end of questioning as an indication that Brown "knew what he did was wrong" and "knew he had been caught." Brown claims trial counsel was deficient for failing object to the prosecutor's "consciousness of guilt" argument. For purposes of our analysis, we will assume without deciding that trial counsel's failure to object to the State's consciousness of guilt argument constitutes deficient performance. Brown claims the prosecutor's argument rose to the level of prosecutorial misconduct, which necessarily supports a finding of prejudice in that he was deprived of a fair trial.

When Brown's case was tried in 2009 and when he filed this habeas motion in 2015, Kansas courts referred to claims that a prosecutor's comments denied a defendant's due process rights to a fair trial as "prosecutorial misconduct." See *State v. Barber*, 302 Kan. 367, Syl. ¶ 4, 353 P.3d 1108 (2015). The applicable test for such a claim was set out in *State v. Tosh*, 278 Kan. 83, Syl. ¶¶ 1-2, 91 P.3d 1204 (2004). Under *Tosh*, an appellate court first decided whether the prosecutor's comment was outside the wide latitude allowed in discussing evidence. 278 Kan. at 85. If so, the court was required to engage in a "particularized harmlessness inquiry" that assessed three factors: (1) whether the misconduct was gross and flagrant, (2) whether it showed ill will on the prosecutor's part, and (3) whether the evidence against the defendant was of such a direct and overwhelming nature that the misconduct likely had little weight in the jurors' minds. 278 Kan. at 93-96. No factor was individually controlling. But before the third could override the first two, an appellate court had to be able to say the harmlessness tests of both

22

K.S.A. 60-261 and *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), were met. *Tosh*, 278 Kan. 83, Syl. ¶ 2.

The district court issued its memorandum opinion denying Brown habeas relief on March 7, 2016. The court applied the *Tosh* test to analyze Brown's claim alleging prosecutorial misconduct. About six months after the district court's memorandum opinion was issued, the Kansas Supreme Court modified the two-step analytical framework for claims that a prosecutor's trial behavior requires reversal. See *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016). *Sherman* changed the name of these claims to "'prosecutorial error'" and saved the pejorative "'prosecutorial misconduct'" designation for more severe wrongdoing. 305 Kan. at 107; see *State v. Chandler*, 307 Kan. 657, 695, 414 P.3d 713 (2018). *Sherman* held:

> "Appellate courts will continue to employ a two-step analysis to evaluate claims of reversible prosecutorial error. These two steps can and should be simply described as error and prejudice."
> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial." 305 Kan. 88, Syl. ¶¶ 6-7.

*Sherman* did not change the applicable standard for deciding whether the prosecutor's actions were outside the wide latitude afforded prosecutors. 305 Kan. at 104 ("The well-developed body of caselaw defining the scope of a prosecutor's 'wide latitude' . . . will continue to inform our review of future allegations of prosecutorial error."). The *Sherman* court modified only the second *Tosh* step:

> "If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt

23

the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citations omitted.]" 305 Kan. at 109.

Although the briefs in this matter were filed over three years after *Sherman* was decided, neither party addressed whether *Sherman* applies to Brown's claim alleging prosecutorial misconduct at his trial. So in order to properly analyze the issue presented, we first must decide whether the standards in effect at the time of trial should govern the court's review of a prosecutorial error alleged in a K.S.A. 60-1507 ineffective assistance of counsel matter that was filed before the *Sherman* decision. Panels of our court presented with this issue appear to summarily—and sometimes inconsistently—decide the matter and no clear rule has emerged. To resolve the issue, we find it helpful to summarize the cases that have addressed *Sherman*'s retroactivity, both in the direct appeal context and the K.S.A. 60-1507 context.

### (a) Sherman's *retroactivity in direct appeal context*

"Generally, an opinion changing the law acts prospectively, applying "'to all cases, state or federal, pending on direct review or not yet final.'"" *State v. Butler*, 307 Kan. 831, 863, 416 P.3d 116 (2018). *Butler* was a case involving a prosecutorial misconduct claim from a jury trial held pre-*Sherman*. However, *Sherman* was decided at some point while Butler was on direct appeal. The Kansas Supreme Court did not decide whether there was a retroactive application issue as both parties agreed to analyze the prosecutorial error claim under the new *Sherman* standard. *Butler*, 307 Kan. at 863.

In *State v. Kleypas*, 305 Kan. 224, 314-24, 382 P.3d 373 (2016), the prosecutorial misconduct claim arose in a jury trial held pre-*Sherman*. While the matter was on direct appeal, *Sherman* was decided. However, unlike *Butler*, neither party addressed whether *Sherman* should apply. So the Kansas Supreme Court applied both the *Tosh* standard and the *Sherman* standard. The court found no error under either standard. *Kleypas*, 305 Kan. at 320, 323-24.

*State v. Thurber*, 308 Kan. 140, 160-71, 420 P.3d 389 (2018), is another case where the misconduct claims arose in a jury trial held pre-*Sherman*. While the matter was on direct appeal, *Sherman* was decided. The parties did not address *Sherman* in their briefs; however, they did address the framework at oral argument. Unlike *Kleypas*, the Kansas Supreme Court decided to apply only the *Sherman* standard because it found that the direct appeal was not yet final. The court ultimately determined that while there were some instances of error, any error was harmless both individually and cumulatively. *Thurber*, 308 Kan. at 169-71.

In *State v. Thomas*, 307 Kan. 733, 741-42, 415 P.3d 430 (2018), the Kansas Supreme Court stated:

> "Generally, an opinion changing the law acts prospectively, applying 'to all cases, state or federal, pending on direct review or not yet final.' But because this case was fully briefed under *Tosh*, and the parties have not had the opportunity to fully argue this case under the *Sherman* rubric, we will apply both *Sherman* and *Tosh*. In the end, Thomas is not entitled to reversal under either standard. [Citations omitted.]"

In *Chandler*, the misconduct claims arose in a jury trial held pre-*Sherman*. While the matter was on direct appeal, *Sherman* was decided. The parties had a chance to address *Sherman* in their supplemental briefs and at oral argument. The Kansas Supreme Court decided to apply only the *Sherman* standard because it found that the direct appeal was not yet final. It ultimately found the prosecutor acted with "a level of culpability that

25

exceeds mere negligence" that compelled the harsher prosecutorial misconduct label contemplated by *Sherman*. *Chandler*, 307 Kan. at 695.

*State v. Kahler*, 307 Kan. 374, 382, 410 P.3d 105 (2018), *aff'd* 589 U.S. __, 140 S. Ct. 1021, 206 L. Ed. 2d 312 (2020), is another case where the misconduct claims arose in a jury trial held pre-*Sherman*. While the matter was on direct appeal, *Sherman* was decided. The parties did not have a chance to brief the issue, but they did have the opportunity to address the *Sherman* framework at oral argument. Both parties conceded the *Sherman* framework applied, so the Kansas Supreme Court applied it. The court ultimately found no error. *Kahler*, 307 Kan. at 383.

In *State v. McBride*, 307 Kan. 60, 63-72, 405 P.3d 1196 (2017), the misconduct claims arose in a jury trial held pre-*Sherman*. While the matter was on direct appeal and after a panel of this court issued its opinion applying the old standard, *Sherman* was decided. The Kansas Supreme Court, without any additional analysis, stated that *Sherman* overruled the old standard and it would proceed by applying *Sherman* to the prosecutorial error claims before it. In applying *Sherman*, the court found reversible error. *McBride*, 307 Kan. at 72.

(b) Sherman's *retroactivity in K.S.A. 60-1507 context*

Turning to the K.S.A. 60-1507 context, the following cases evaluate ineffective assistance of counsel claims for failure to object to or identify prosecutorial errors. Review of these cases reflect that application of the *Tosh* rule as opposed to the *Sherman* rule is all over the map when the claims and the direct appeals occurred well before *Sherman* was decided.

In *Reed v. State*, No. 119,484, 2020 WL 1070350 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* April 1, 2020, Reed claimed that his trial counsel was

26

ineffective for failing to object to alleged prosecutorial misconduct and his appellate counsel was ineffective for failing to raise those alleged prosecutorial errors on direct appeal. These claims arose and his direct appeal was final before *Sherman* was decided. Without any additional analysis, a panel of this court applied *Sherman* to the error claims by appellate counsel. It found no error. *Reed*, 2020 WL 1070350, at *12.

In *Watts v. State*, No. 117,184, 2020 WL 741723 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* March 16, 2020, Watts claimed that his appellate counsel was ineffective for failing to raise alleged prosecutorial errors on direct appeal. These claims arose and his direct appeal was final before *Sherman* was decided. Without any additional analysis, this court applied *Sherman* to the error claims. It found no reversible error. *Watts*, 2020 WL 741723 at *9-10.

In *Sumpter v. State*, No. 117,732, 2019 WL 257974 (Kan. App.) (unpublished opinion), *rev. denied* 310 Kan. 1071 (2019), a panel of our court applied the *Tosh* test to a K.S.A. 60-1507 claim of overlooked prosecutorial misconduct. Before finding no reversible error, the panel stated:

> "We mention that the Supreme Court revamped the standards for assessing claims of prosecutorial error after Sumpter's trial and direct appeal. We suppose, however, that the standards in effect at the time of Sumpter's trial and appeal should govern our review of this collateral challenge to his convictions. The Kansas Supreme Court declined to apply *Sherman* in cases that were fully briefed on direct appeal when it was decided. And the issue here is the constitutional adequacy of Sumpter's legal representation when the earlier standards for prosecutorial error governed; so it follows the quality of the representation should be measured against the law as it was then. The choice, however, is not especially significant. Under either the pre-*Sherman* standards or *Sherman* itself, the focus for our purposes rests on sufficiently substantial prejudice to Sumpter to compromise his right to a fair trial." [Citations omitted.] *Sumpter*, 2019 WL 257974, at *11.

In *Phillips v. State*, No. 118,066, 2018 WL 6071388 (Kan. App. 2018) (unpublished opinion), Phillips raised several instances of alleged prosecutorial misconduct in his K.S.A. 60-1507 appeal but not in the context of ineffective assistance of counsel claims. These claims arose, and his direct appeal was final before *Sherman* was decided. Like *Watts* and *Reed* above, a panel of this court applied the *Sherman* test to these claims without any additional analysis on whether the *Tosh* test should apply.

In *Waller v. State*, No. 116,706, 2017 WL 4847862 (Kan. App. 2017) (unpublished opinion), Waller claimed that his appellate counsel was ineffective for failing to raise alleged prosecutorial errors on direct appeal. These claims arose and his direct appeal was final before *Sherman* was decided. Without any additional analysis, this court applied *Sherman* to the error claims. It found no reversible error. *Waller*, 2017 WL 4847862, at *3, 6.

In *Mitchell-Pennington v. State*, No. 115,407, 2017 WL 1104599 (Kan. App. 2017) (unpublished opinion), Mitchell-Pennington claimed that his appellate counsel was ineffective for failing to raise alleged prosecutorial errors on direct appeal. His prosecutorial error claims arose, and his direct appeal was final before *Sherman* was decided. In evaluating the claims, this court recognized that the first prong of the analysis remained unchanged after *Sherman*. However, it noted that the prejudice analysis significantly changed. It ultimately found that there was error, but in analyzing the prejudice prong, it applied the *Tosh* test—as a panel of this court did in *Sumpter*. The court found that appellant was not prejudiced under the *Tosh* prejudice prong. *Mitchell-Pennington*, 2017 WL 1104599, at *7-10.

Based on our review of the relevant caselaw, we can see that the Supreme Court applied *Sherman* only in situations where the parties agreed it applied and/or had a chance to address it on appeal. Those cases also consistently show that *Sherman* only applies prospectively in cases that are "pending on direct review or not yet final"—many,

28

if not all, of those cases were pending on direct appeal when *Sherman* was decided. This is why the Kansas Supreme Court decided to apply the *Sherman* test in those cases.

But the Kansas Supreme Court has not yet weighed in on this issue in the K.S.A. 60-1507 context. And the summary of cases from panels of our court reflect an inconsistent application of the *Sherman* rule in cases where the alleged errors and the direct appeals occurred before *Sherman*. But we agree with the panels' assessment in *Sumpter* and *Mitchell-Pennington*, which explain why it is proper to apply the *Tosh* prejudice test to collateral claims of prosecutorial error that occurred before the decision in *Sherman*. The rationales in those cases were based on the Supreme Court's reasoning in the direct appeal cases: *Sherman* only applies prospectively in cases that are "pending on direct review or not yet final." When an inmate files a collateral motion for relief under K.S.A. 60-1507, the direct appeal is over, not pending. Therefore, we hold the *Tosh* rule applies in K.S.A. 60-1507 cases where both the alleged errors occurred and the direct appeals were finalized before *Sherman*.

Brown filed his ineffective assistance of counsel claim 11 months before *Sherman* was decided. His claim is grounded in trial counsel's failure to object to alleged prosecutorial misconduct occurring at his trial six years earlier. His direct appeal was final on September 17, 2012, which was four years before *Sherman* was decided. Based on this chronology and our holding above, we apply the *Tosh* prejudice analysis to Brown's claim.

In denying Brown habeas relief on this issue, the district court applied the *Tosh* prejudice analysis to Brown's claim of prosecutorial misconduct because the *Sherman* case had not yet been decided. In its memorandum opinion, the district court concluded that the consciousness of guilt statements likely were error but that they did not constitute gross and flagrant misconduct, that they were not motivated by ill will, and that they likely had little weight in the minds of the jurors. On appeal from the district court's

29

decision, Brown's sole argument is that he was prejudiced because trial counsel's failure to object deprived him of an opportunity to raise the issue on direct appeal in conjunction with his other claims of prosecutorial error. Significantly, Brown does not allege that trial counsel's failure to object created a reasonable probability that the outcome of the trial would be different.

Like the district court, we find no evidence that the prosecutor's statements constituted gross and flagrant misconduct, that they were not motivated by ill will, or that they likely weighed heavily in the minds of the jurors. We also note that the prosecutor's improper statements occurred at the end of closing argument, they were not repeated or emphasized, and they were ameliorated when the prosecutor told the jury it was the jury's decision to determine what happened in the video. Having considered the record as a whole, we find nothing to support a finding that counsel's alleged deficiency created a reasonable probability that the outcome of the trial would be different.

(5) *Child witness expert*

In his next claim, Brown argues counsel was deficient for failing to hire an expert in child witness interviewing techniques. In his motion, Brown relied on *Mullins v. State*, 30 Kan. App. 2d 711, 46 P.3d 1222 (2002), to generally argue that a defense attorney's performance is deficient where the attorney fails to hire such an expert and that prejudice necessarily follows. In *Mullins*, a panel of this court upheld a defendant's habeas challenge when the trial attorney defending a child sex abuse charge did not hire an expert witness who could testify about child-witness interview techniques. 30 Kan. App. 2d at 717-19. But at the habeas evidentiary hearing in *Mullins*, the defendant presented three witnesses to support that claim.

- A criminal defense attorney who had defended about 40 sexual abuse cases testified that having an expert on witness interview techniques was essential and that there was no valid defense strategy that could support failing to call one.

- A psychologist testified that the interviews of the victim in Mullins' case were flawed, making the victim's testimony unreliable.

- The attorney who had defended Mullins at trial testified that he had not interviewed key witnesses before trial, had not investigated the possibility of hiring an expert in child interview techniques, and in hindsight now realized that with adequate resources he would have hired such an expert to help defend the case.

The record before us is much different than the record our court considered in *Mullins*. In that case, evidence supported the claim that specific testimony should have been obtained by the trial defense counsel and that this additional evidence would have undercut key evidence supporting the criminal charge. Here, Brown presented no evidence at the evidentiary hearing to support his claim. We find no deficient performance on the part of trial counsel for failing to hire an expert in child witness interviewing techniques.

Similarly, Brown's contention that his trial counsel was ineffective for failing to adequately pursue a motion for acquittal also fails. In assessing a district court's decision to deny a motion for judgment of acquittal, an appellate court will consider all the evidence in a light most favorable to the State and determine if a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. In doing so, the appellate court does not reweigh the evidence, assess witness credibility, or resolve conflicting evidence. *State v. Llamas*, 298 Kan. 246, 254, 311 P.3d 399 (2013). Brown's argument assumes that if counsel had pursued the motion, Brown would have prevailed.

31

But Brown provides no argument or evidence to persuade us that the trial court would have granted a motion for acquittal. Trial counsel was not deficient in failing to file a motion for acquittal.

### (6) *Limiting instruction*

Brown's next claim is that his trial counsel was ineffective for failing to request a limiting instruction advising the jury that prior consistent statements by the victim could only be used to corroborate the victim's testimony—not as substantive evidence of guilt. This argument is grounded in the fact that the video recording of the victim's interview was introduced into evidence at trial. But we already have found beyond a reasonable doubt that any alleged deficiency in trial counsel's failure to object to introduction of the recorded interview without first being provided a written transcript did not affect the outcome of the trial. Based on this finding, we similarly find that there is not reasonable probability that providing a limiting instruction would have changed the outcome of the trial.

### (7) *Appellate counsel*

Finally, Brown claims that his direct appeal counsel was ineffective for failing to raise the consciousness of guilt argument on appeal. But if counsel had raised it on direct appeal, it is likely the Kansas Supreme Court would have arrived at the same conclusion the district court did—any error by the prosecutor was harmless. See *Brown I*, 295 Kan. at 212-15. Brown's claims to the contrary are speculative and unsupported by the record and the Kansas Supreme Court's decision in *Brown I*. We find no deficient performance on the part of appellate counsel.

Considering the totality of circumstances, we find Brown has failed to prove the requisite manifest injustice that would excuse the untimely filing of his K.S.A. 60-1507

motion. Because he failed to establish manifest injustice, the district court did not err in denying Brown's second 60-1507 motion as untimely.

Affirmed.